**MARKMAN LAW**
DAVID MARKMAN (Nev. Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd., Suite #130
Las Vegas, Nevada 89121
Telephone: (702) 843-5899
Facsimile: (702) 843-6010

**GUTRIDE SAFIER LLP**
Seth A. Safier (*pro hac vice*)
  seth@gutridesafier.com
Anthony J. Patek (*pro hac vice*)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 10 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

**2:25-ms-00002**

## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE SUBPOENA TO META PLATFORMS, INC., <br><br> IN CONNECTION WITH: <br><br> EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM, on behalf of themselves, and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC., <br><br> Defendants. | Misc. Action No. _____ <br><br> In connection with Case No.: 2:22-cv-00412-RFB-BNW (D. Nev.) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL NON-PARTY APPEARANCE AT HEARING BY META PLATFORMS, INC. PURSUANT TO SUBPOENA AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; MOTION TO EXPEDITE** <br><br> Date:          TBD <br> Time:          TBD <br> Place:          TBD |

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................. 2

II.  BACKGROUND .................................................................................................. 3

    A.   Plaintiffs' Lawsuit Against Zuffa. ......................................................... 3

    B.   The Zuffa Court's Instruction to Subpoena Meta to Appear for an
        Evidentiary Hearing on the Meta Pixel. ............................................... 3

    C.   Plaintiffs Timely Subpoenaed Meta. ..................................................... 5

III. ARGUMENT........................................................................................................ 6

    A.   The Court Should Expedite this Motion.................................................. 6

    B.   The Court Should Compel Meta to Appear at the Evidentiary Hearing. .... 6

IV.  CONCLUSION .................................................................................................... 9

PLFS' MOTION TO COMPEL META APPEARANCE AT HEARING

## TABLE OF AUTHORITY

**Cases**

*Jones v. Raymond Corp.*, No. 22-mc-80074-JSC, 2022 U.S. Dist. LEXIS 79240 (N.D. Cal. May 2, 2022) ................................................................................................................................. 6

**Statutes**

18 U.S.C. § 2710 ........................................................................................................................ 3

Cal. Bus. & Prof. Code § 17200 ................................................................................................ 3

Cal. Civ. Code § 1799.3 ............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................................... 8

Fed. R. Civ. P. 26(b) ................................................................................................................. 6

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 7

Fed. R. Civ. P. 34 ...................................................................................................................... 2

Fed. R. Civ. P. 34(c) ................................................................................................................. 7

Fed. R. Civ. P. 45 ...................................................................................................................... 2

Fed. R. Civ. P. 45(b) ................................................................................................................. 7

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether non-party Meta Platforms, Inc. (d/b/a Facebook) should be required to appear at the evidentiary hearing, currently scheduled for February 20, 2025, in *Bloom v. Zuffa*, No. 2:22-cv-00412-RFB-BKW, in response to Plaintiffs' corrected Subpoena to Appear, served December 18, 2024.

PLFS' MOTION TO COMPEL META PURSUANT TO SUBPOENA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 34 and 45, Plaintiffs hereby move to compel third party Meta Platforms, Inc. (d/b/a Facebook) ("Meta") to produce a witness to attend the evidentiary hearing relating to class certification in the pending lawsuit here in the District of Nevada: *Bloom et al. v. Zuffa, LLC, et al.*, No.: 2:22-cv-00412-RFB-BNW (D. Nev.). The core issue in Plaintiffs' claims against Defendant Zuffa lies in the unauthorized transfer of sensitive data—including Facebook IDs and URLs containing the titles of video recordings viewed or requested by Zuffa's subscribers—to Meta without the consent of those users, in violation of the Video Protection Privacy Act and California privacy laws. At the November 19, 2024 hearing on Plaintiffs' Motion for Class Certification in the *Bloom v. Zuffa* case, Judge Boulware stated that he would like a witness from Meta present at a February 20, 2025 evidentiary hearing to answer questions regarding Meta pixels and what related data in Meta's possession. That same day, per Judge Boulware's instructions, Plaintiffs issued a subpoena for testimony to Meta. Meta objected to the form of that subpoena, and Plaintiffs served a corrected Subpoena to Appear at Trial or Hearing by mail and email on December 18, 2024, which Meta received by mail on December 23, 2024.

Meta has objected to the Subpoena to Appear at Hearing on the ground that this Court has no jurisdiction to compel attendance because Meta is located in Menlo Park, California, more than 100 miles from the Court. The Court should overrule Meta's objection and compel it to supply a witness. First, although Meta's headquarters are in California, it has a major west coast data center in Las Vegas Nevada, and thus "regularly does business" within the District of Nevada. And since that data logistics center relates to Facebook's website traffic and data systems, it appears to be directly involved in collecting and storing the very Pixel data at issue here, making it likely that at least one Meta employee in Nevada is competent to testify to what

that data contains. Second, even if the only witnesses available were in Menlo Park, California, that witness could appear via teleconference. [1]

## II.   BACKGROUND

### A.   Plaintiffs' Lawsuit Against Zuffa.

Plaintiffs Everett Bloom, Jack Graham, and David Lindholm have sued Zuffa in the District of Nevada for violations of the federal Video Protection Privacy Act, 18 U.S.C. § 2710, ("VPPA"), Cal. Civ. Code § 1799.3, the California Constitution, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.*, Declaration of Anthony J. Patek in Support of Miscellaneous Action and Motion to Compel Non-Party Deposition by Meta Platforms, Inc. Pursuant to Subpoena ("Patek Decl."), ¶ 11. The alleged privacy violations stem from Defendant Zuffa's use of Facebook software tracking devices called pixels on Zuffa's Fight Pass website. *Id.* Plaintiffs' complaint alleges that, as a result of Defendant Zuffa's use of a Facebook pixel (i.e., a tracking device offered by Facebook to its business clients) on Zuffa's Fight Pass website, Meta receives personally identifiable information and other information about Defendant Zuffa's consumers, including Plaintiffs. *Id.*

### B.   The Zuffa Court's Instruction to Subpoena Meta to Appear for an Evidentiary Hearing on the Meta Pixel.

On November 19, 2024, the Court held a hearing on Plaintiffs' motion for class certification in the Bloom v. Zuffa case. At that motion hearing, the Court set a further evidentiary hearing for February 20, 2025. The Court indicated that the focus of its hearing would be what information the Meta pixel data contained, and whether that data supported certification of a class. In addition to testimony from the parties' expert witness, the Court expressly stated that it wished a Meta employee with knowledge of the Meta pixel data to be present so the Court could ask questions of Meta directly.[2]

---

[1] Plaintiffs are contemporaneously moving to modify the schedule in the *Zuffa* case to accommodate this motion practice.

[2] The Court also gave permission to Plaintiffs to subpoena Meta for three days of Meta pixel data associated with Zuffa's pixels, in order to obtain sample pixel data for absent class members.

- 3 -

In response to Plaintiffs' concerns that Meta would resist any subpoena to appear at the hearing, the Court indicated that it would order Meta's appearance:

> **THE COURT**: But I just tell you that my review of the law and in handling these cases I think it's important [to resolve whether evidence supports class certification prior to certifying a class].
>
> . . . I think the only issue that would complicate this slightly is we would have to identify someone from Meta who would need to come in, whoever you all would identify, to come in and say, "This is the data that's available," right. And the only thing that we might – I might consider doing in the context of discovery is requiring them to produce some version of that even before we have this evidentiary hearing.
>
> . . .
>
> **MR. PATEK**: Sure. Okay. And I just want to make clear, . . . Meta eventually turns stuff over and eventually produced a witness, but it took a while, right, 18 months between the time we first served the subpoena. So I just want to make sure that we would get --
>
> **THE COURT**: Well, you and I asking is slightly different, right.
>
> **MR. PATEK**: Yes. No, that's what I'm -- that's what I'm saying -- getting at, Your Honor, is that I assume that this would have your backing.
>
> **THE COURT**: No, I would order them to produce a witness, right.

Hearing Tr. (Patek Decl., Ex. 1) at 13:22-15:8; see also id. at 23:9-12 (Court indicating it wished Meta's prior deponent, Tobias Wooldridge, to be present at the hearing); id. at 26:17-23 (Court instructing the parties to "subpoena the Meta person. Hopefully that won't create any issues, but we'll address that as it comes."); id. at 27:23-28:9 (Court indicating that, if Mr. Wooldridge is not available, any Meta employee who "could talk me through some of the information in terms of Meta's pixels" would be acceptable.)

In short, the Court instructed Plaintiffs to subpoena Meta immediately, and to inform the Court as soon as possible of any refusal by Meta, so the Court could timely resolve any necessary motion to compel.

### C.    Plaintiffs Timely Subpoenaed Meta.

Plaintiffs had previously served Meta with subpoenas for documents and deposition testimony in the Northern District of California, and had been forced to file multiple motions to compel Meta to comply with those subpoenas. See *Bloom v. Meta Platforms, Inc.*, No. 3:23-cv-80127-LJC (N.D. Cal. April 25, 2023); *Bloom v. Meta Platforms, Inc.*, No. 4:23-mc-80319 (N.D. Cal. Dec. 8, 2023). As a result, when the November 19, 2024 class certification hearing occurred, Plaintiffs were already in contact with Meta's outside counsel, Laurie Edelstein of Jenner & Block.

On November 21, 2024, Plaintiffs served amended subpoenas for documents and deposition testimony on Meta per the Court's instructions. Patek Decl., Ex. 2. Plaintiffs served those amended subpoenas via email to Ms. Edelstein and via mail to Meta's registered service agents in California on November 21, 2024.[3] (N.B., through Ms. Edelstein, Meta declined service by email.) By email, Meta objected that the amended subpoena for deposition testimony was inappropriate to compel appearance at a hearing.[4] Patek Decl., Ex. 2. In view of Meta's objection, Plaintiffs corrected the purported deficiency and emailed a Subpoena to Appear at Trial or Hearing on December 12, 2024, followed by a mailed paper copy on December 18, 2024, which Zuffa received by mail on December 23, 2024.[5] Patek Decl., Exs. 4-5 and 7-8. Zuffa served written objections to the amended subpoena on Dec. 16, 2024. Patek Decl., Ex. 6.

Counsel for Plaintiffs, Defendant Zuffa, and Third Party Meta met and conferred via Zoom on December 18, 2024. Patek Decl., ¶ 12. At that meeting, Meta lodged an oral objection to the Subpoena to Appear, noting it was more than 100 miles from the District of Nevada, and thus outside this Court's subpoena power under Federal Rule of Civil Procedure 45(c). *Id.* Plaintiffs offered the possibility of remote appearance, but Meta objected to that as well, arguing

---

[3] Plaintiffs served the December 18, 2024, subpoena to appear on Meta in California. Plaintiffs have subsequently served an essentially identical subpoena to appear on Meta's registered agent in Nevada.

[4] Although Meta lodged objections to the amended subpoena to produce documents, it agreed to produce documents in response to the subpoena with a target production date of February 7, 2025.

[5] Plaintiffs' attorney Anthony Patek was travelling outside the United States from November 21, 2024, to December 10, 2024. He served the corrected subpoena shortly after returning.

it was still outside the Court's subpoena power under Rule 45(c). *Id.*

On January 6, 2024, Meta provided written objections to the Subpoena. Patek Decl., Ex. 8. Meta again objected that that the Court lacked power to force attendance at the hearing because Meta was more than 100 miles outside of the D. Nevada. Meta also represented that it did not have any offices within the D. Nevada—a fact which Plaintiffs contest.[6]

In view of Meta's objection and refusal to appear, Plaintiffs immediately emailed Judge Boulware's chambers to seek guidance on whether the Court wished to hold a CMC or have Plaintiffs proceed immediately to motion practice. Patek Decl., ¶ 13. The Court declined to provide "guidance," but indicated it would hear any related motion on an expedited basis given the upcoming February 20, 2025 hearing. *Id.*

## III.    ARGUMENT

### A.    The Court Should Expedite this Motion.

Good cause exists to expedite this motion to compel. The Court instructed Plaintiffs to bring any dispute by Meta to its attention as soon as possible, so the evidentiary hearing could be completed in a timely manner. Although Plaintiffs are separately filing for a continuance to address this and other logistical conflict, that hearing is currently set for February 20, 2025, and thus imminent. Further, upon receiving Plaintiff's January 7, 2025 communication notifying it of the need for a motion to compel, the Court indicated it would handle any such motion on an expedited basis.

### B.    The Court Should Compel Meta to Appear at the Evidentiary Hearing.

The Court should order Meta to produce testimony responsive to the Subpoena. "Rule 45 governs discovery of non-parties by subpoena." *Jones v. Raymond Corp.*, No. 22-mc-80074-JSC, 2022 U.S. Dist. LEXIS 79240, at *2 (N.D. Cal. May 2, 2022). "The scope of discovery under Rule 45 is the same as under Rule 26(b)." *Id.* Federal Rule of Civil Procedure 26(b) allows a

---

[6] Although not relevant at this time given Meta's representation that it will produce pixel data in response to Plaintiffs amended subpoena for production of documents, Meta also objected to the Subpoena to Appear's request to produce said pixel data at the hearing in the District of Nevada.

party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense. "Parties may seek discovery within the scope of Rule 26(b) by deposing a witness pursuant to Rule 30 or serving requests for production of documents pursuant to Rule 34." *Id.*

The Subpoena complies with Federal Rule of Civil Procedure 45 and Federal Rule of Civil Procedure 34(c). The documents and testimony are nonprivileged matters relevant to Plaintiffs' claims and are proportional to the needs of the case because Meta's possession of Plaintiffs' and putative class members information received via Zuffa's use of the Facebook pixel would tend to show Zuffa was, or is, unlawfully causing personally identifiable information about its users' video rentals to be sent to third-party Meta, which is the substance of Plaintiffs' allegations. Fed. R. Civ. P. 26(b)(1). Moreover, as this Court has previously recognized, the data collected by Meta and its ability to resolve whether a class can be certified are core issues in the Bloom v. Zuffa case.

Contrary to Meta's objection, the subpoena complies with Rule 45(c), because Meta has offices in this District and regularly conducts business here. Specifically, in 2023, Meta opened a data center logistics facility in Las Vegas, which is uses to support all of its data facilities. Patek Decl., Ex. 10. As the data center purportedly serves all of Meta's data needs, this presumably includes support for Meta's receipt and storage of data received via Meta's pixels from users, including users of the Nevada-based UFC Fight Pass website at issue here. Furthermore, Meta is registered as a business in Nevada, with Nevada business ID NV20131194449 and a registered service agent in Carson City. Patek Decl., ¶ 14. These facts facially contradict Meta's representation that it does not regularly conduct business here. And the fact that it does do business here satisfies Rule 45(c)'s requirement that the hearing for which attendance is commanded be "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Here, the "person" is Meta, and Meta is physically present and doing business in Las Vegas every day, only a few miles from this Court.

(Plaintiffs also note that UFC's CEO, Dana White, was recently named to Meta's Board of Directors, which further supports the conclusion that Meta regularly conducts business in this

district. It also represents a further tie between Zuffa and Meta and their business operations, which further undercuts any objection that it is unfair to compel Meta to participate in these proceedings.)

The requested deposition testimony falls squarely within the ambit of Federal Rule of Civil Procedure 26. As described more fully above, Plaintiffs allege that Zuffa unlawfully transmits personally identifiable user data to Meta without consent. *Supra*, Section II. The Subpoena seeks deposition testimony to establish, *inter alia*, how the Meta Pixel data produced by Meta was collected and generated. Patek Decl., ¶ 5, Exs. 5 & 5A (Subpoena to Meta).

Plaintiffs have exhausted their ability to obtain this discovery from Zuffa. Plaintiff Bloom served Zuffa with a First Set of Requests for Production of Documents over two years ago on May 15, 2022. Defendant Zuffa responded that it has no documents responsive to Request No. 27 which seeks "ALL DOCUMENTS RELATED to transmission of PLAINTIFF'S SUBSCRIBER DATA to FACEBOOK in connection with PLAINTIFF'S use of the UFC FIGHT PASS or the FIGHT PASS WEBSITE, INCLUDING records showing ANY transmission of: . . . (3) PLAINTIFF'S Facebook ID; [or] (4) the URL of the website hosting the videos requested or obtained by PLAINTIFF . . . ." Patek Decl., ¶ 15 ("[F]ollowing a reasonably diligent search, Zuffa believes that no documents responsive to this Request exist in its possession, custody, or control"). This information was also sought through interrogatories and a 30(b)(6) deposition, to no avail. *Id.* In fact, Zuffa's 30(b)(6) witness expressly stated it had no knowledge of the functioning of the Facebook pixels. *Id.* Zuffa has produced expert testimony (filed under seal) arguing that the pixel data Zuffa produced proves Meta never received any personally-identifiable user data as a result of Zuffa's web site. *Id.* As such, Plaintiffs need evidence from Meta directly explaining how the pixel data produced by Meta were collected and generated, and what additional information it has about absent class members.

Plaintiffs' request to have a Meta witness appear at the hearing is not, by itself, unduly burdensome to Meta. As Meta's Las Vegas data center includes employees and personnel who collect data in this District, Meta is conducting business only a few miles from this Court on a daily basis. And while Meta is a third party, it is also the creator and operator of the user tracking

- 8 -

pixel that Zuffa used when unlawfully disclosing Plaintiffs' personally identifiable information. The Court recognized this when at the November hearing when it requested Meta's participation and indicated that it would order Meta to attend. Indeed, Plaintiffs served the Subpoena to Appear in response to the Court's request to do so. Thus, it is not unjust to require Meta to produce a witness to testify on that topic.

Plaintiffs note that they are also willing to consider other options to reduce the burden on Meta. For instance, as noted above, Plaintiffs are willing to have a Meta witness appear via videoconference, or even to appear at one of the Court's in the Northern District of California and be conferenced into the hearing in the District of Nevada.

## IV.    CONCLUSION

For all the reasons above, the Court should grant Plaintiffs' motion to compel Meta's attendance at the evidentiary hearing currently set for February 20, 2025, or other date as decided by the Court.

/ / /

/ / /

Dated: January 10, 2025

GUTRIDE SAFIER LLP

*/s/ Anthony J. Patek /s/*
Seth A. Safier (State Bar No. 197427)
 seth@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
 anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

PLFS' MOTION TO COMPEL META PURSUANT TO SUBPOENA

**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE SUBPOENA TO META PLATFORMS, INC., <br><br> IN CONNECTION WITH: <br><br><br> EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM, on behalf of themselves, and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC., <br><br> Defendants. | No.: _____ (D. Nev.) <br><br> **DECLARATION OF ANTHONY J. PATEK IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL META PLATFORMS, INC. TO APPEAR AT HEARING** |

I, Anthony J. Patek, declare and state that:

1. I am an attorney admitted to practice pro hac vice before this Court and an associate at the law firm Gutride Safier LLP ("GSLLP"). I submit this declaration in support of Plaintiffs' Motion to Compel Meta Platforms, Inc. to Appear at Hearing. I have personal knowledge of the facts set forth in this Declaration and could and would testify competently to them if called upon to do so.

2. A true and accurate copy of the transcript of the November 19, 2024 hearing on Plaintiffs' Motion for Class Certification in Bloom v. Zuffa, No. 2:22-cv-00412-RFB, is attached as Exhibit 1.

3. Attached as Exhibit 2 is a true and accurate copy of Plaintiffs' 3rd Amended Subpoena to Meta Platforms, Inc., emailed to Meta counsel Laurie Edelstein. Plaintiffs subsequently served this amended subpoena by certified mail.

4. Attached as Exhibit 3 is a true and accurate copy of email correspondence received from Laurie Edelstein on November 25, 2024, objecting to the amended subpoena.

5. Attached as Exhibit 4 is a true and accurate copy of email correspondence sent from Anthony Patek to Laurie Edelstein and counsel for Zuffa with a notice of Subpoena to Appear at Hearing and produce documents, sent December 12, 2024.

6. Attached as Exhibit 5 is a true and accurate copy of email correspondence sent from Anthony Patek to Laurie Edelstein reiterating that the Subpoena to Appear at Hearing was being sent, sent December 13, 2024.

7. Attached as Exhibit 6 is a true and accurate copy of Meta's written objections to the 3rd Amended Subpoenas, received December 16, 2024.

8. Attached as Exhibit 7 is a true and accurate copy of email correspondence from Laurie Edelestein, counsel for Meta Platforms, sent to Anthony Patek, received December 16, 2024.

9. Attached as Exhibit 8 is a true and accurate copy of the Subpoena to Appear at Trial served on Meta via US mail on December 18, 2023, along with mailing receipts as Proof of Service.

PATEK DECL. ISO MOT. TO COMPEL

10.     Attached as Exhibit 9 is a true and accurate copy of Meta's written objection, stating it would not appear at the *Zuffa* hearing, dated January 6, 2025.

11.     Attached as Exhibit 10 is a true and accurate copy of an article noting Meta's opening of a data logistics center in Las Vegas, Nevada, in 2023.

12.     Plaintiffs Everett Bloom, Jack Graham, and David Lindholm have sued Zuffa in the District of Nevada for violations of the federal Video Protection Privacy Act, 18 U.S.C. § 2710, ("VPPA"), Cal. Civ. Code § 1799.3, the California Constitution, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.*

13.     Counsel for Plaintiffs, Defendant Zuffa, and Third Party Meta met and conferred via Zoom on December 18, 2024. At that meeting, Meta lodged an oral objection to the Subpoena to Appear, noting it was more than 100 miles from the District of Nevada, and thus outside this Court's subpoena power under Federal Rule of Civil Procedure 45(c). Plaintiffs offered the possibility of remote appearance, but Meta objected to that as well, arguing it was still outside the Court's subpoena power under Rule 45(c).

14.     In view of Meta's objection and refusal to appear, Plaintiffs immediately emailed Judge Boulware's chambers to seek guidance on whether the Court wished to hold a CMC or have Plaintiffs proceed immediately to motion practice. The Court declined to provide "guidance," but indicated it would hear any related motion on an expedited basis given the upcoming February 20, 2025 hearing.

15.     I searched the Nevada business entity registry. My search located a record indicating that Meta is registered as a business in Nevada, with Nevada business ID NV20131194449 and a registered service agent in Carson City.

16.     Plaintiffs have exhausted their ability to obtain this discovery from Zuffa. Plaintiff Bloom served Zuffa with a First Set of Requests for Production of Documents over two years ago on May 15, 2022. Defendant Zuffa responded that it has no documents responsive to Request No. 27 which seeks "ALL DOCUMENTS RELATED to transmission of PLAINTIFF'S SUBSCRIBER DATA to FACEBOOK in connection with PLAINTIFF'S use of the UFC FIGHT PASS or the FIGHT PASS WEBSITE, INCLUDING records showing ANY

transmission of: . . . (3) PLAINTIFF'S Facebook ID; [or] (4) the URL of the website hosting the videos requested or obtained by PLAINTIFF . . . ." Patek Decl., ¶ 15 ("[F]ollowing a reasonably diligent search, Zuffa believes that no documents responsive to this Request exist in its possession, custody, or control"). This information was also sought through interrogatories and a 30(b)(6) deposition, to no avail. *Id.* In fact, Zuffa's 30(b)(6) witness expressly stated it had no knowledge of the functioning of the Facebook pixels. *Id.* Zuffa has produced expert testimony (filed under seal) arguing that the pixel data Zuffa produced proves Meta never received any personally-identifiable user data as a result of Zuffa's web site. *Id.* As such, Plaintiffs need evidence from Meta directly explaining how the pixel dat produced by Meta were collected and generated, and what additional information it has about absent class members.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Corta Madera, California on January 10, 2025.

/s/ Anthony J. Patek /s/
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com

- 3 -
PATEK DECL. ISO MOT. TO COMPEL

EXHIBIT 1

1

—————2:22-cv-00412-RFB-BNW—————

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

EVERETT BLOOM, JACK GRAHAM,          )
and DAVE LINDHOLM, on                )   Case No. 2:22-cv-00412-RFB-BNW
behalf of themselves, and           )
those similarly situated,            )   Las Vegas, Nevada
                                     )   Tuesday, November 19, 2024
                Plaintiffs,          )   1:45 p.m.
                                     )
        vs.                          )   MOTION HEARING
                                     )
ZUFFA, LLC; ENDEAVOR                 )   *C E R T I F I E D   C O P Y*
STREAMING, LLC; and                  )
ENDEAVOR GROUP HOLDINGS,
INC.,

                Defendants.


                REPORTER'S TRANSCRIPT OF PROCEEDINGS

        THE HONORABLE RICHARD F. BOULWARE, II,
             UNITED STATES DISTRICT JUDGE


APPEARANCES:          See next page


COURT REPORTER:       Patricia L. Ganci, RMR, CRR
                      United States District Court
                      333 Las Vegas Boulevard South, Room 1334
                      Las Vegas, Nevada  89101

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

2

—————————2:22-cv-00412-RFB-BNW—————

APPEARANCES:

For the Plaintiffs:

     **ANTHONY J. PATEK, ESQ.**
     **SETH A. SAFIER, ESQ.**
     GUTRIDE SAFIER, LLP
     100 Pine Street, Suite 1250
     San Francisco, California 94111
     (415) 505-6226

For the Defendants:

     **ARIANA REED, ESQ.**
     CAMPBELL & WILLIAMS
     710 South 7th Street, Suite A
     Las Vegas, Nevada 89101
     (702) 382-5222

     **SUSAN K. LEADER, ESQ.**
     **ALI REZA RABBANI, ESQ.**
     PAUL HASTINGS, LLP
     1999 Avenue of the Stars, 27th Floor
     Los Angeles, California 90067
     (310) 620-5700

3

—————2:22-cv-00412-RFB-BNW—————

LAS VEGAS, NEVADA; TUESDAY, NOVEMBER 19, 2024; 1:45 P.M.

--oOo--

P R O C E E D I N G S

THE COURT:  Please be seated.

COURTROOM ADMINISTRATOR:  The matter now before the Court is Bloom versus Zuffa, LLC, Case Number 2:22-cv-412-RFB-BNW.  Counsel, please make your appearances, beginning with the plaintiff.

MR. PATEK:  Good afternoon, Your Honor.  This is Anthony Patek of Gutride Safier appearing for the plaintiffs, and with me is my colleague, Seth Safier.

THE COURT:  Okay.  Good afternoon.

MS. LEADER:  Hi.  Good afternoon, Your Honor.  Susan Leader with the law firm of Paul Hastings.  I'm here with my colleague, Ali Rabbani, and also joined with us is local counsel, Ariana Reed.

THE COURT:  Good afternoon.

So we are here on a few different motions, but I really want to cut to the chase on this class certification motion and ask you all a few questions.  So, Mr. Patek, are you going to be arguing this?

MR. PATEK:  Yes.

THE COURT:  Why don't you come up to the podium, please.

So let me ask you this very basic question.  Do we or

Case 2:25-cv-00065-RFB-EJY     Document 2     Filed 01/10/25     Page 21 of 115
Case 2:22-cv-00412-RFB-BNW     Document 165     Filed 11/26/24     Page 4 of 36

4

―2:22-cv-00412-RFB-BNW―

do we not know whether or not this information was sent to Facebook?

MR. PATEK:  I think we do, Your Honor.  I would say that we could prove it --

THE COURT:  Well, I'm saying that because there's disagreement between the parties about whether or not or what can be demonstrated.  I know there's a default setting.  What I'm saying is, is there actually some sort of other evidence that either you have or could have that would demonstrate whether or not an individual had this information sent via the pixel once they viewed a video?

MR. PATEK:  The best evidence is the pixel data itself, which shows the URL that was transmitted which confirms that the transmission occurred via a third-party cookie and which has been associated with the user's identity.

THE COURT:  Okay.  Do you have that for individual users?

MR. PATEK:  Well, we have it for the three plaintiff -- we have it for the three plaintiffs, although for one of them most of their viewing history was prior to the Facebook data. So, for him, we have circumstantial evidence.

THE COURT:  Okay.  So I'm saying for potential class members, is it ascertainable --

MR. PATEK:  Yes, we --

THE COURT:  -- whether or not they actually had this

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 22 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 5 of 36

5
——————2:22-cv-00412-RFB-BNW——————

information sent or not?  And I say that because obviously defense keeps saying --

MR. PATEK:  Right.

THE COURT:  -- and this technology is new to me so forgive me -- that there's a zero -- and I quote, zero evidence, right, that this was actually sent.  You've read that same thing that I read.

MR. PATEK:  There -- there is certainly not zero evidence that these things were sent.  I think the -- the difference between the parties is, it's sort of like getting evidence on a murder where the defense wants somebody there who was a witness and videotaped it so that they can prove every single thing beyond a shadow of a doubt; whereas, you might in fact be able to show that somebody committed a murder using circumstantial evidence, such as the presence of DNA at the scene, so on, and so forth.

So we have the pixel data.  There is a ton of circumstantial evidence in there that these -- I mean, we know that the data was transmitted.  That is direct evidence.  It's right there.  It's reflected in the URLs.  It's reflected in the field entries that show that there were third-party cookies transmitted.

THE COURT:  So wait.  Is the question whether or not it was blocked, then?

MR. PATEK:  No, by the time it's a pixel -- but if it's

Case 2:25-cv-00065-RFB-EJY     Document 2     Filed 01/10/25     Page 23 of 115
Case 2:22-cv-00412-RFB-BNW     Document 165     Filed 11/26/24     Page 6 of 36

6

—————2:22-cv-00412-RFB-BNW—————

in the pixel data, there is no question that it was blocked. And that is actually a big part of the reason why we think that the concerns that the defense has expressed are overblown because they made all sorts of hay about how all of the plaintiffs had -- were doing all of these things that were supposed to block the third-party cookie transmissions for all of them. And what turned out to be the case when we actually got the pixel data is that all of their concerns turned out to be for naught.

So for Graham we had 325 different actual transmissions of URL data which appear to have happened via -- I mean, based on the data happened via a third-party cookie. We know that the c_user was a third-party cookie that was present on the computer because he was a Facebook user. And so it is reasonable to infer that as part of the third-party data that was transmitted his Facebook ID was included because that would have been how Facebook associated the URL data with his identity when we went to go and get that data.

THE COURT: So Facebook has or Meta, whatever, has all of this data?

MR. PATEK: Yes.

THE COURT: For all of the potential class members?

MR. PATEK: We believe -- yeah, that's our understanding is that they're tracking this constantly for all the people who have Facebook IDs or Meta IDs depending on which

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 24 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 7 of 36

7

————2:22-cv-00412-RFB-BNW————

one you want to use.

THE COURT:  So I thought that you had received some confirmation about that.  I'm trying to find out the -- was it a deposition or declaration?

MR. PATEK:  Yeah, so we had a deposition.  We got in -- it was -- I believe David Woodridge was the person at Facebook that was deposed.  And he was basically the one who explained what all of the fields in the pixel data referred to and who confirmed that there was in fact, you know, URL data for the website.

THE COURT:  And I assume this data's all being preserved now given this lawsuit.

MR. PATEK:  That is our understanding.  We subpoenaed it.  We gave -- we gave -- we served on Meta a notice to sequester and preserve the data.  Of course, you know, I'm not Meta.  I don't represent them.  So I can't be, you know, 100 percent certain that they did what I asked them to, but we certainly took all of the steps that we could to preserve that data.

THE COURT:  Okay.

Because it seems to me, again, I'm not trying to reduce this to one issue, but that seems to me to be the --

MR. PATEK:  Yes.

THE COURT:  -- crux of the dispute between the parties is --

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

8

—2:22-cv-00412-RFB-BNW—

MR. PATEK:  And I agree --

THE COURT:  -- because it seems to me, and I'll let defense respond to this, if they were sending the data and it was regularly sending it, it doesn't really seem to be an issue about an alleged violation, but there's arguments about them not sending it and them not being technically a video producer or whatever the term would be.  So there's some other arguments.

But as I look at this issue regard class certification, the issue seems to revolve around this one particular question about demonstrating whether or not the data was actually sent to the degree that a class could be certified.

Would you agree with that?

MR. PATEK:  Yes, I would agree that is the main issue.

THE COURT:  So I will tell you all, and I'll let you argue this today, but one of the things I've done in the past as relates to this is have an evidentiary hearing, have the two experts come up and have the Meta person come up and tell me, and then I can resolve it.  Because I have two different versions of whether or not and how this data is being transmitted.  I think both of them potentially could be persuasive.  And in prior cases involving class certification, and as you know in this Circuit, the Circuit directs us now as District Court judges to actually resolve disputes between experts or technical issues.  This is a technical issue that I would want to be able to clarify as it relates to the experts.

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 26 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 9 of 36

9

———2:22-cv-00412-RFB-BNW———

And so is there any reason why I couldn't do that? I know you think I don't need to do that, but I do feel like again --

MR. PATEK: I certainly don't think there's any reason why you couldn't do that, Your Honor. I do think that in cases like *Lytle* the Ninth Circuit has set out that you don't actually have to prove the merits and, thus, you don't have to figure out whether or not expert testimony is going to be admissible. But I certainly understand that sometimes judges want that kind of hearing, and we I don't think would have any objection to doing that. I think -- but part of the question for us would just be what the scope of the evidence that you would want to see is. So --

THE COURT: Well, part of it is I would want to understand a few things. First, you have -- I have these expert reports which are slightly contradictory as relates to not just the setting, but what can be blocked and not blocked and what people can see. I don't know that I fully understand because I haven't been -- I can't ask them questions about --

MR. PATEK: Sure.

THE COURT: -- for example, your suggestion, well, if we want to limit the class, could we just do this and is that an identifiable class, right. You've offered some ways to address the defendant's questions and I appreciate that, but you're not an expert. I'd like to hear from the experts, and then I'd like

10

—————2:22-cv-00412-RFB-BNW—————

to hear from someone at Meta who could tell me what data is available, right, so that we don't have an issue.  Let them come up here and tell me, "Yes, if you order us to provide it, we can provide it."

That resolves another question because the defense suggests, from my standpoint, two issues.  One is it's not clear that the data's readily accessible even to the extent that information may have been sent, but also we're not clear that it was sent in the first place.  That seems to be something that I could --

MR. PATEK:  Sure.

THE COURT:  -- resolve by asking them:  "Do you have this?  What does it look like?  Is it in a form that could be produced?"  And so the hearing would really be on this very specific question.

Now, obviously we'd have to have a little bit of background.  I'd let them do this in terms of their background.  But in this situation where from my standpoint I need a little more information I feel like from the experts because you all have done a very good job of representing your positions to the extent that I'm still wanting to resolve this issue about how I can confirm the, let's just say, adequacy or sufficiency of what you call circumstantial evidence of the transmission of the information.

Because, as far as I know, we don't have some sort of

PATRICIA L. GANCI, RMR, CRR      (702) 385-0670

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 28 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 11 of 36

11

—————2:22-cv-00412-RFB-BNW—————

log that says, John Smith, yes; Jane Doe, no.  But what we have is a default setting.  We have a pixel that sort of activates it a certain way that potentially can be blocked, but you're essentially saying, "Look, for all intents and purposes it's for the most part in this circumstance it's not blocked for lots of different reasons or, to the extent it's blocked, it's de minimus in terms of class certification."  And they're saying the opposite.

MR. PATEK:  Right.

THE COURT:  And they're saying, "Look, you know, you'd have to have these individualized, sort of, determinations," which is --

MR. PATEK:  Sure.

THE COURT:  -- a fairly regular argument, but a legitimate one --

MR. PATEK:  Yeah.

THE COURT:  -- if there's an issue --

MR. PATEK:  So I think --

THE COURT:  -- so, again, I'm going -- I'm just explaining to you what my concerns are so you have an idea of what the scope would be of the hearing because I actually think you all have laid it out fairly --

MR. PATEK:  Yeah.

THE COURT:  -- clearly in your briefing because you've gone and back and forth on basically the same issue.

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 29 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 12 of 36

12
—2:22-cv-00412-RFB-BNW—

MR. PATEK:  So I think the one thing that I would put out there is, while I very much understand your concerns, I think in terms of from an efficiency perspective it might make more sense to certify the class, allow the parties to go forward with more discovery, and prepare their motions for summary judgment which are going to overlap vastly with the evidentiary concerns that you're expressing.  And then we can deal with that issue then or, you know, also there will be an opportunity if it looks like based on what came out during further discovery and the motions for summary judgment that there's a problem or for that matter if it goes to trial and it turns out there's a problem, there can always be a motion to decertify the class.  I mean, there are a lot of procedural safeguards that are put in place to protect the due process concerns that defendants have raised.

THE COURT:  Right, but one of them is not certifying the class in the first place, right.  I mean, I appreciate that, again, but my concern really is I feel based upon, again, the law in this Circuit and its evolution to Courts being more rigorous, Courts trying to resolve disputes at the certification stage, this is something that the Court can do.

MR. PATEK:  Okay.

THE COURT:  Right.

MR. PATEK:  I mean, again, I would just caution, right, the Ninth Circuit was very clear in *Lytle*.  I mean, they're

13

—2:22-cv-00412-RFB-BNW—

still reaffirming --

THE COURT:  In fact, I just had to deal with this with --

MR. PATEK:  Okay.

THE COURT:  -- actually this same particular defendant. You may not realize this.  On the fighters' class certification we went through this same issue, right.  And only in this district the Circuit very clear that if you don't resolve these things, District Court, they're going to send it back.  And they've sent them back here, to my district in fact, not my case, but in other cases.

And so you're right.  It can be a judgment call, but particularly in the context of experts presenting dueling or potentially conflicting information, I actually think the law's fairly clear that I have to resolve it.  Now, you're right.  I could potentially resolve that in the context of the papers, but I don't think that that's appropriate in this case because I have questions.

But that's all right.  You don't have to agree with me because that's not necessary.

MR. PATEK:  No, I understand that, Your Honor.

THE COURT:  But I just tell you that my review of the law and in handling these cases I think it's important.  I also think that the defendants have a right to know this at the certification stage.  I don't think it's appropriate to

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 31 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 14 of 36

14
———————2:22-cv-00412-RFB-BNW———————

essentially certify it if I have these questions that I think need to be resolved.

And, again, going back and forth with looking at the reports and my notes from the two experts, and I know I'm going to -- I don't want to butcher their names. It's Herold and Schnell, I think that's who the experts are. I think the only issue that would complicate this slightly is we would have to identify someone from Meta who would need to come in, whoever you all would identify, to come in and say, "This is the data that's available," right. And the only thing that we might -- I might consider doing in the context of discovery is requiring them to produce some version of that even before we have this evidentiary hearing.

Like, in other words, right now as I understand it that pixel data has been provided just for the named plaintiff.

MR. PATEK: Just for the three named representatives plaintiffs.

THE COURT: It might make sense for us to be provided a sample, for example, of the potential class members and that would help me in terms of understanding this issue.

MR. PATEK: Sure. Okay. And I just want to make clear, I mean, if we do as Your Honor proposes, because I will just note, like, Meta eventually turns stuff over and eventually produced a witness, but it took a while, right, 18 months between the time we first served the subpoena. So I just want

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 32 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 15 of 36

15

─────2:22-cv-00412-RFB-BNW─────

to make sure that we would get --

THE COURT: Well, you and I asking is slightly different, right.

MR. PATEK: Yes. No, that's what I'm -- that's what I'm saying -- getting at, Your Honor, is that I assume that this would have your backing.

THE COURT: No, I would order them to produce a witness, right.

MR. PATEK: Okay.

THE COURT: And so, you know, we could have -- they could have a back and forth, and we could talk about what would be sealed or not sealed. But, I mean, I don't see how they could avoid this, but, again, they're a large corporation trying to protect their interests. I could see where they would want to have some protection as relates to the confidentiality of information, which it seems to me would be their main concern, actually. And we can address that.

I mean, I think that at some point they're going to have to realize that this is going to become public.

Bless you, if you sneezed.

But we're not at that stage yet. But I do think providing some of the pixel data ahead of time would be appropriate potentially. I mean, I don't know that I actually necessarily need it. More directly, I simply need a witness who's going to tell me what the data looks like, you know. A

———————2:22-cv-00412-RFB-BNW———————

sample would be helpful, but the reality of it is you already have a small sample, and we can talk about whether or not the data for the other class members would look any different, right.

It's enough there for me to be able to ask the questions that I need to ask to resolve the issue, I mean, because I don't think it's a particularly complicated issue, but I just want to resolve the dispute between the parties.

So is there anything else that you had on that on this particular issue?

MR. PATEK:  I don't think so, Your Honor.

THE COURT:  Because I do believe, also, this resolves a lot of the questions that relate to the issues of certification: commonality, common evidence, common damages.

MR. PATEK:  Yeah, absolutely, Your Honor.

THE COURT:  I think --

MR. PATEK:  We certainly agree with you that -- that this is the core dispute, right, is what will the data actually prove.

THE COURT:  Right.  Okay.  Well, let me hear from defense counsel, and then I may come back to you.

MR. PATEK:  Okay.

MS. LEADER:  Thank you, Your Honor.

Is it possible if I could just pass out -- excuse me -- just -- we made a few visuals just from the evidentiary record

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 34 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 17 of 36

17
                         —2:22-cv-00412-RFB-BNW—

because I think it's just easier because we actually agree with plaintiffs' counsel that the best evidence is the pixel data that was produced by Meta in response to plaintiffs' subpoena, which basically asks for, "hey, give us all of the information for these three plaintiffs." They provided Meta with the Facebook ID, and Meta produced lots of data. It was overinclusive in nature, actually, but I think we were going to do it as slides that we could bring up --

THE COURT: I don't need that. I have a very specific question which I want you to address. I don't need the handout.

MS. LEADER: Okay.

THE COURT: I mean, I want you first to address the proposal the Court has because, again, this dispute between the parties seems to be at the heart of what's happening here. I think again, as I've said to Mr. Patek, I believe the law is pretty clear from *Olean* and other cases in the Circuit that if there's a dispute between experts that I think is -- goes to the core certification that I need to resolve that, and I have the authority to have them come in and appear and testify before me.

MS. LEADER: But I don't think there is a dispute amongst the experts here, and the reason why I say that is the whole theory of this case is not about just the transmittal of the URLs. That's obviously a piece of it, but, again, under the VPPA it's very clear. It doesn't matter if you transmit the URLs unless it's associated with some personally-identifiable

18

2:22-cv-00412-RFB-BNW

information, right.  So if you go back to *Bork*, right, you have --

THE COURT:  Right, but they say --

MS. LEADER:  -- main address and movie titles --

THE COURT:  Counsel, they say that you can figure it out.  Like, it's not like that you all dispute that, too, right?

MS. LEADER:  No, that is certainly what is in dispute, and if -- if -- that is what I was hoping to actually just do some visuals from actually their expert's report because I think it illustrates how we got to where we are, is when they filed this case, what they represented to the Court and what's been litigated for more than two years now, is that in this Meta pixel what was being transmitted to Meta was not just the URLs --

THE COURT:  Right.

MS. LEADER:  -- but they mention these cookies, the c_user cookie and another cookie I'm less familiar with called the m_page cookie.  And if Your Honor looks at Ms. Herold's report, that's their expert, she actually has an illustration of what those cookies look like.  And you have, like, the name of the cookie --

THE COURT:  Yes, I --

MS. LEADER:  -- in one column, right, and the value. For the m_page cookie and the c_user cookie, it's a nine-digit code.  And if you or I -- if the Court was to do this, if I were

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 36 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 19 of 36

19

————2:22-cv-00412-RFB-BNW————

to do this, you go on someone's Facebook and you open it up, and you just copy and paste that nine-digit number, you're able to pull up that user's account, right.  We tried this out with my colleague's dog's Facebook account, but you put the nine-digit number in there and you could see all of this PII.

So their whole theory was, look, these third-party cookies which have the Facebook ID in it have been sent -- transmitted through the Meta pixel to Meta along with URLs.

THE COURT:  Right.

MS. LEADER:  Meta was subpoenaed.  The production came after they filed their moving papers, the Meta pixel production.  So they did not have that information when they wrote the -- when they filed their motion for class certification.

Not a single c_user cookie in there.  Not a single m_page cookie.  Why does this matter?  Because I -- Your Honor can look in the column, but there is a column that's labeled -- this is basically all of the hits -- here's everything we got off that Meta pixel.  And when you look down that column, what you mostly see is something called an fbp --

THE COURT:  Right.

MS. LEADER:  -- first-party cookie.  The only thing the Court needs to know about the first-party cookie, the fbp, and this is not in dispute, is it does not have a Facebook ID in it.  It is a piece of random code.  And so under *Eichenberger*, the reason why they were very focussed on c_user cookies and m_page

PATRICIA L. GANCI, RMR, CRR      (702) 385-0670

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 37 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 20 of 36

20
————————2:22-cv-00412-RFB-BNW————————

cookies is you have to see something, even if it's not a name and address like we had back in the Block Buster days, right, you still need to see something that an ordinary person could look at and tie it to an actual person, an actual identity.

With the Facebook ID you could do that. So if that field from Meta had been populated with c_user cookies, with m_page cookies, they would have an argument. I will obviously represent --

THE COURT: So you're saying the information that was transmitted to Meta could not be used to figure out who these people were?

MS. LEADER: That's what I'm saying, is under *Eichenberger* --

THE COURT: I'm asking a specific question.

MS. LEADER: Yes. An ordinary person, which is the *Eichenberger* test -- and that's what I was going to show Your Honor, is what these look like. It's -- an fbp is --

THE COURT: That's another issue which I -- which we should -- we can talk about, which is I don't think it's just an ordinary person in the context of somehow some of this information is being transmitted. I do think, right, I mean, we're in an evolving era of technology. I don't know, right, and I don't believe that *Eichenberger* or other precedent suggests that somehow, right, you know, that we should remain ignorant of how technology can be used to decipher individual's

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 38 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 21 of 36

21

—2:22-cv-00412-RFB-BNW—

identity.

And so my question to you is, are you saying that Meta could not figure out from the information that was sent to it who these people were?

MS. LEADER:  That is not what I'm saying, but what I am saying, Your Honor, is I do think respectfully that the law says just that; that when *Eichenberger* looked at the split in circuits between the First Circuit and the Third Circuit, the Ninth Circuit decided we're going to go with the Third Circuit, which is the *Nickelodeon* case which actually --

THE COURT:  Wait.  So you're saying to me that even if Meta could literally click a button, a macro, that would translate this information to an identity, that's still one step too far under *Eichenberger* and so, therefore, on that basis alone that the Court would reject the plaintiffs' position?

MS. LEADER:  Well, I can say two things.  Going back to the first-party cookie, which is the fbp --

THE COURT:  Yes, but that's actually not my question. My question to you is, under the very precedent you're presenting, are you saying that if it was as easy as using some sort of macro or a one or two second, sort of, click, if Meta could do that, are you saying under *Eichenberger* the fact that they have to take an additional step that the normal person wouldn't have the step means that they can't be held -- your client can't be held responsible for that?

—————————2:22-cv-00412-RFB-BNW—————————

MS. LEADER:  Yes, my -- what I'm saying is under *Eichenberger* is you look at not what the user could potentially do or if it could reverse engineer that information, but you look at whether an ordinary person could look at it and actually link it with a user.  So could the Court take whatever that code is -- and, I mean, obviously a Facebook ID, you still have to do something, right.  I mean, a nine-digit code, if you or I are looking at it, doesn't mean very much.  But if you understood that, okay, I could open a web page, plug this in here, I could reach the user, that's something that an ordinary person could do.  You don't need vast resources to be able to do that.

But, I mean, and this is -- my colleague's helping me, but the words from *Eichenberger* really says:  The statute views disclosure from the perspective of the disclosing party.  It looks at what information is actually handed over.

THE COURT:  Well, if they know that they can translate it, it doesn't seem to me to make a difference.  You're right, if they -- if they understand that.  But here's what I'm going to tell you, you're not going to convince me.  I appreciate that.  You're not going to convince me today.  I'm going to still order the evidentiary hearing because your discussion today actually has convinced me even more, right, that it needs to happen because I do want to hear from these experts who talk about exactly what you're talking about.  Because from what I understood, at least from the plaintiffs' briefing, was that

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 40 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 23 of 36

23

—————2:22-cv-00412-RFB-BNW—————

this was a fairly easy process of figuring this out.  And that these different settings and these cookies did not prevent this inform -- this identifying information from being transmitted. You're saying something different.  I appreciate that.

I'm just telling you, you can save some of your energy because you're not going to convince me today, but what I would like you to do is talk to me about what you think in terms of this evidentiary hearing that we're going to have.

Because right now I'm thinking of three witnesses:  the two experts, each expert, and Mr. Woodridge.  That's -- I just have very specific questions.  I'll let you all ask these very specific questions.

MS. LEADER:  Well, I think the questions that were answered because when the Meta -- when Mr. Woolbridge -- Woodridge was deposed, the Meta witness, he was not involved in preparing the responses to the subpoena, but I think he already answered the question about -- with the fbp, the first-party cookie, he said there is no Facebook ID.  And whether or not Meta has the ability to reverse engineer that, we would argue is not -- is not the test under *Eichenberger* --

THE COURT:  But that's not my position, right.  And he could be here to talk about that, right, or someone else they designate who would be most knowledgeable about that particular issue.

So three witnesses that I see so far.  Any other

24

2:22-cv-00412-RFB-BNW

witnesses you think that we would need to have?

MS. LEADER: I mean, I'd like to speak with my colleague. Potentially we'd want someone from Zuffa.

THE COURT: And why would that matter for this particular issue? And I say that because, I mean, there are other sort of factual issues, but it does seem to me, again, this very unique and very specific question about what's happening with this transmission and what is and isn't being transmitted is crucial.

Now, if you think that Zuffa has information related to that, I'm certainly happy to hear that. I'm just not sure given the way you all have phrased -- have framed -- excuse me -- this dispute whether they're adding anything in particular. If you think that they are, certainly I would allow you to present a witness. But to me really the Court's focus and, again, the focus as relates to class certification is when you have experts who are presenting dueling or potentially conflicting or inconsistent information, the Court has to resolve that. And in my judgment the best way to resolve that is for me to be able to ask questions because I need to figure it out.

I know you all have been sitting with this for two years, but I've only been sitting with it as it relates to trying to figure this out for the past few weeks here as it relates to sorting through the technology. But I still have a list of questions given the fact that you all don't seem to

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 42 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 25 of 36

25

————————2:22-cv-00412-RFB-BNW————————

quite fully agree about this pixel data and what it

demonstrates.

So --

MS. LEADER:  Perhaps -- oh, sorry.

THE COURT:  What I'm saying is if you think that a

Zuffa witness would be helpful, I'll let you offer one.

MS. LEADER:  I think it really depends on what

questions the Court has.  I mean, from -- if the central

question really is what information Meta produced, I mean, we

have that for the three plaintiffs and I think we have the

testimony from the Meta witness as to what that is and what that

contains or doesn't contain.

THE COURT:  I really just want to be able -- I believe

that I understand what your positions are.  I really just want

to be able to have not even -- maybe it's a full day, but really

just a half day with the experts to try to ask very specific

questions that I have about this -- both this technology, your

question about, well, what does it mean, right, when they get

the data back, what are they actually transmitting.  Because

there's some disagreement between the parties about what that --

what that transmission is.  Also, this issue about these, sort

of, ad blockers and third-party blockers and whether you're

using a particular browser, I have a list of questions that

relate to those disputes that were not resolved for me by

reading your dueling briefs.

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 43 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 26 of 36

26

————————2:22-cv-00412-RFB-BNW————————

And so I think you all are aware of these issues because you all go back and forth on them basically throughout the briefs, but it's a very specific narrow issue, which I also think is fairly controlling in the context of this certification. Because if it is as you suggest, I don't know the class could be certified. But if it is as the plaintiffs suggest, possibly, but there may still need to be some issues of limitations, what's ascertainable, what's not. Because that's a separate issue, which is, you know, even if some of this information is being transmitted, what does that class look like? How would you identify it? How would you identify damages as relates to that in terms of whether or not there are individualized issues that we'd have to address?

So I need answers to some of my questions. And as much as I appreciate your briefing, you all are not the experts that I need to help me figure this out.

So here's what I'm thinking. I have to talk with my scheduler here, but I don't really want this to take that long. So I'm trying to find in the beginning part of next year, January or February, just one day, you all bring your experts in. We subpoena the Meta person. Hopefully that won't create any issues, but we'll address that as it comes. And then we have the experts come in and talk to me about this issue. So we can look at a date, but I'm looking at -- we have that one week in February. What week is that?

Case 2:25-cv-00065-RFB-EJY Document 2 Filed 01/10/25 Page 44 of 115
Case 2:22-cv-00412-RFB-BNW Document 165 Filed 11/26/24 Page 27 of 36

27

—2:22-cv-00412-RFB-BNW—

(Court conferring with courtroom administrator.)

THE COURT: I'm sorry, counsel. You can take your seat.

MS. LEADER: Okay.

THE COURT: I don't want you to stand up here while we're trying to figure out our dates.

MS. LEADER: Understood.

(Court conferring with courtroom administrator.)

THE COURT: So how about February 18th?

MR. PATEK: Yes, Your Honor, that works for plaintiffs. The one caveat, we'd obviously need to double-check the experts' schedules.

THE COURT: Right.

MR. PATEK: But --

MS. LEADER: Is it possible to do it one day later in that week?

THE COURT: We could do the 19th -- well, let's see.

(Court conferring with courtroom administrator.)

THE COURT: Yes. How about the 20th, Thursday, the 20th?

MR. PATEK: Yes, Your Honor.

MS. LEADER: That would be great, Your Honor.

THE COURT: So check with your experts, right, and then we should check with Mr. Woodridge or whoever that person would be. And I will tell you, again, what I really want to

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 45 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 28 of 36

28

—2:22-cv-00412-RFB-BNW—

understand is someone who could talk me through some of the information in terms of Meta's pixels. So whoever that would be, if it's Mr. Woodridge, if it's someone else, I don't really care. I'm going to rely upon you. You said Mr. Woodridge. That's fine with me.

And who can tell me about what data exists. So, for example, if the pixel data that we have for the named plaintiffs is essentially the same data we would have for the class members, someone who can tell me that, right. And then right now those would be the three witnesses. And I don't even think that -- again, we'll block the whole day out because technical experts sometimes tend to take a little bit of time to get through what they need to get through.

And so the way that it will work, just so you understand, is I will let you all each present your experts in terms of going through their findings. I will then ask some questions. I will let opposing counsel ask some questions, but you'll present your witnesses. Okay.

We'll have some time limits on those. So, again, you know, probably 30 minutes or 40 minutes to present, right, the expert and their report and findings. Then I'll have some questions which may take 35, 40 minutes or more. And then we'll have opposing counsel ask questions. It will be something along those lines. So, you know, it will probably take a good portion of the day.

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 46 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 29 of 36

29

————2:22-cv-00412-RFB-BNW————

And for now, after hearing you speak, I'm not sure that we would need any sort of sample data from Meta and also because it just may take too much time to figure out what the sample would be. I think based upon the discussion I've heard today and thinking about the material that you all have submitted to me, having the experts talk and having the one representative from Meta talk about the issues and the existing pixel data should be enough. I mean, all they would have to do is confirm to me, the Meta person, that this is essentially the type of data that we have for individuals like the named plaintiffs, and that would be enough.

MR. PATEK: Your Honor, so, I mean, if we can get a sample of data, I do think that would be helpful. I mean, can we go ahead and subpoena it and we at least see what the response is from Meta?

THE COURT: So while we're here, let's figure out what the sample is because what I don't want to have happen is then we have a back-and-forth about the appropriate sample, not the appropriate sample. Let's discuss what the sample is that you would request, see if there are any objections that I can resolve, and let's just go through it right now.

If you want to take a moment to confer, you can. And if you want to take a moment to meet and confer, you can. I mean, I think it may make sense to be able to have it, as I said before, as a way to sort of illustrate some of the issues that

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 47 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 30 of 36

30
—2:22-cv-00412-RFB-BNW—

we're talking about.

So I will let you request it.  We have enough time for that to be able to be produced.

MR. PATEK:  Okay.  Thank you, Your Honor.

THE COURT:  Take a moment, sure.

(Counsel conferring.)

MR. PATEK:  So, Your Honor?

THE COURT:  Oh, okay.  Yes.

MR. PATEK:  Sorry.  So I don't know if we need to meet and confer --

THE COURT:  Why don't you take a moment just to talk about what you're asking for.  They may not agree, but at least they know what it is, right, so they can respond.  So if you all want to take a moment.  If you want to, we have a little attorney room right back there if you guys want to go and talk about it.

(Recess taken at 2:20 p.m.)

(Resumed at 2:25 p.m.)

THE COURT:  All right, counsel.  We're back on the record.

MR. PATEK:  So, Your Honor, there isn't really agreement between the parties, but our proposal would be, since we've already served a subpoena on Meta that theoretically asked them to sequester and preserve the data, we would go and serve another one or an amended subpoena and try to get a sample of a

Case 2:25-cv-00065-RFB-EJY    Document 2    Filed 01/10/25    Page 48 of 115
Case 2:22-cv-00412-RFB-BNW    Document 165    Filed 11/26/24    Page 31 of 36

31

─2:22-cv-00412-RFB-BNW─

couple of days that were within the proposed class period for the pixel data that had been transmitted from the Meta pixel that was registered to Zuffa or, rather, it's actually four Meta pixels I believe that were registered to Zuffa. And, you know, see what's in there and see if there was more useful information, you know.

And part of the reason for that is, you know, we're thinking if the idea is that we want to use the Meta data to assemble a class list for notice purposes or whatever, then it makes sense to check and see what we're actually going to get when we go in and we're requesting stuff without having all of the class members identified ahead of time.

MS. LEADER: And, Your Honor, it seems like the central question here is how does it work, not what the data says. And we have three very different plaintiffs. We have Mr. Bloom who's in California, Mr. Graham who's in Florida, we've got Lindholm who's in Colorado, different time periods, different practices in terms of how the -- which browsers they used, whether or not they blocked cookies.

So as it is, it appears representative, and we got thousands of rows of data that has already been analyzed by both of the experts and that Meta's already testified to. And so we feel like the data set is certainly robust enough for there to be testimony, and there has and there will be testimony --

THE COURT: So are you going to be arguing to me that,

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 49 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 32 of 36

32

—————2:22-cv-00412-RFB-BNW—————

for example, for one particular named plaintiff this may have happened, but we don't know that for other potential plaintiffs and so, therefore, you can't certify the class?  Because if you're going to be saying that to me, then it's hard to argue that it is robust because frequently in these cases defense counsel will come back and say, "Well, this was one person, but there are other people out there who might fall into these other categories and you don't know, Court, about these other categories."  And so while I appreciate that, that is a common argument that's presented to me.

I doubt that you're going to give up the right to make that argument.  So in that instance what is the prejudice to that?  In fact, because it seems to me, if your arguments are true, that will in fact be borne out by the data and the experts can explain that.  They can say, "Look, as you can see with this data, even though it is a small sample, this demonstrates the issues here that we've raised about the class."

So I don't know that I see any sort of prejudice to your client.  It does seem to me that in fact if your argument is what you say it is that it would actually be borne out by the data, would it not?

MS. LEADER:  It would be borne out by the data.  I think that the difference of opinion between or the different arguments you're hearing -- Your Honor's hearing from both sides is, you know, we have the data.  I don't think -- Meta was

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

Case 2:25-cv-00065-RFB-EJY Document 2 Filed 01/10/25 Page 50 of 115
Case 2:22-cv-00412-RFB-BNW Document 165 Filed 11/26/24 Page 33 of 36

33
—2:22-cv-00412-RFB-BNW—

pretty clear this is the type of data that's produced. Our position is you can't just speculate as to what Meta does with that data and that it's irrelevant under *Eichenberger* because reverse-engineering is not the test. It has to be personally identifiable information. They've obviously taken a very different position.

But to Your Honor's question about prejudice, I think the concern is and what plaintiffs were suggesting is to get all of the data for all of the potential class members --

THE COURT: I thought he just said a few days. I actually didn't hear him say all of the data for all class members.

MS. LEADER: That --

THE COURT: I thought they were saying an amended subpoena that was actually a smaller data set.

MS. LEADER: And that was not what was discussed in the break room. They said they were going to seek all of the data. What we suggested in response to that was, perhaps, adding to the data pool the data for I think his name is Lozano, but the other plaintiff that they proposed adding to the class whose name was not pulled, his data was not pulled from -- with the Meta production.

THE COURT: Well, I don't know that just adding one person is going to do it. I mean, this class is, what, thousands of potential people, right? Let's say 100 people.

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 51 of 115
Case 2:22-cv-00412-RFB-BNW   Document 165   Filed 11/26/24   Page 34 of 36

34

─────2:22-cv-00412-RFB-BNW─────

MR. PATEK:  I agree with Your Honor.

THE COURT:  Let's say 100.  Okay?  We're not going to do thousands.  Let's just say 100 people's information, however -- particular class members.  I'm not sure how you would identify them, but --

MR. PATEK:  Well, so I think the issue in terms of retrieving the data is, without having the specific Facebook IDs --

THE COURT:  Right, you can't know then --

MR. PATEK:  Well, we wouldn't -- we wouldn't be asking for the data -- I mean, I suppose in theory we could ask for a random sample of a certain number of people, but I was just going to suggest, as I said, like, pick like one, two, three dates, specific dates, and look at all of the data that was transferred through the Zuffa pixel to Meta on those dates.  And that should be, you know, a fairly limited subset of data, but would cover multiple plaintiffs.  I mean, honestly, we don't really know how many people that will cover on a given day.

THE COURT:  Right.

MR. PATEK:  It could be 10.  It could be 100.  You know, could be --

THE COURT:  I suspect it will be more than 10, right. So why don't we say this.  Pick three days.  That seems to me that will be more than enough to subpoena the information.

And you also need to subpoena in a time where if

PATRICIA L. GANCI, RMR, CRR      (702) 385-0670

Case 2:25-cv-00065-RFB-EJY Document 2 Filed 01/10/25 Page 52 of 115
Case 2:22-cv-00412-RFB-BNW Document 165 Filed 11/26/24 Page 35 of 36

35

2:22-cv-00412-RFB-BNW

there's going to be an issue about the response, if you need further Court action, you have to be able to come to me in time to be able to do something and also to give them time, right?

MR. PATEK: Right.

THE COURT: So try to subpoena this as soon as possible --

MR. PATEK: We will get this out probably tomorrow.

THE COURT: -- so that we can address this because I really would like to have the hearing in February. I wouldn't want to push this back, and then that would allow me to be able to try to get my decision out some time thereafter. Because it will take me a little bit to digest, but to try to get it out, you know, the next couple of months after that. So the sooner we can get in and get this information produced and the witnesses testifying, the sooner then I can issue my decision on the motion to certify the class.

So is there anything else that we need to do today?

MR. PATEK: I don't think so, Your Honor.

MS. LEADER: I don't believe so, Your Honor.

THE COURT: All right. Well, thank you all for your time. Thank you also for adjusting your schedules. I appreciate that. I'm glad that you made it here. Safe a travels back to where you are.

MR. PATEK: Thank you.

THE COURT: So have a good afternoon.

36

—————2:22-cv-00412-RFB-BNW—————

MR. PATEK:  You, too, Your Honor.

MS. LEADER:  Thank you, Your Honor.

(Whereupon the proceedings concluded at 2:33 p.m.)

--oOo--

COURT REPORTER'S CERTIFICATE

I, PATRICIA L. GANCI, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Date:   November 26, 2024.

/s/ **Patricia L. Ganci**

Patricia L. Ganci, RMR, CRR

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

EXHIBIT 2



GUTRIDE SAFIER
Attorneys at Law

Anthony Patek <anthony@gutridesafier.com>

## Bloom v Zuffa - Third Amended Subpoena to Meta Platforms

1 message

**Anthony Patek** <anthony@gutridesafier.com>                    Thu, Nov 21, 2024 at 4:53 PM
To: "Edelstein, Laurie J." <ledelstein@jenner.com>, "Langlinais, Jonathan Alexander" <JALanglinais@jenner.com>,
"MacMillen, Hayley L." <HMacMillen@jenner.com>
Cc: ufc <ufc@gutridesafier.com>, "Rabbani, Ali" <alirabbani@paulhastings.com>, "Leader, Susan"
<susanleader@paulhastings.com>

Dear Ms. Edelstein -

Attached, please see Plaintiffs' Third Amended Subpoena to Meta Platforms, Inc.  Please confirm whether you are
willing to accept service on Meta Platform's behalf.

Regards,

**Anthony J. Patek**

Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
anthony@gutridesafier.com
Ph: (415) 639-9090
M:  (415) 505-6226

---

**3 attachments**


**UFC - 3rd Amended Deposition and Doc Subpoena to Meta (2024.11.20).pdf**
583K


**UFC - 3rd Amended Doc Subpoena to FB (2024.11.20).pdf**
540K

**UFC - 3rd Amended Ex. A to Meta PLatforms Subpoena (2024.11.20).pdf**
171K

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| EVERETT BLOOM | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    2:22-cv-00412-RFB-BNW |
| META PLATFORMS, INC. | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                          Facebook c/o Meta Platform, Inc.
                             1601 Willow Road, Menlo Park, CA 94025
                      *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Lloyd D. George Courthouse, 333 S. Las Vegas Blvd., Las Vegas, Nevada  89101 | Date and Time:  02/20/2025 9:00 am |
|---|---|

The deposition will be recorded by this method:     stenography

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

   Documents requested by EXHIBIT A TO PLAINTIFF'S THIRD AMENDED SUBPOENA ON META PLATFORMS, INC., Request 6a.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      11/20/2024

         *CLERK OF COURT*

                                    OR

                                                        /s/Anthony J. Patek/

_____        _____
    *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Everett Bloom, Jack Graham, and David Lindholm _____, who issues or requests this subpoena, are:
Anthony J. Patek, 100 Pine Street, Suite 1250, San Francisco, CA 94111, anthony@gutridesafier.com, 415-639-9090

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:22-cv-00412-RFB-BNW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

      I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____  .

      ❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

      ❒ I returned the subpoena unexecuted because: _____

_____ .

      Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____  .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00   .

      I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

|  |  |
|---|---|
| EVERETT BLOOM | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  2:22-cv-00412-RFB-BNW |
| ZUFFA, LLC | ) |
|  | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
              Facebook c/o Meta Platform, Inc.
              1601 Willow Road, Menlo Park, CA 94025
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
    See EXHIBIT A TO PLAINTIFF'S THIRD AMENDED SUBPOENA ON META PLATFORMS, INC.

| Place: Gutride Safier LLP<br>     100 Pine Street, Suite 1250<br>     San Francisco, CA 94111 | Date and Time:<br><br>     01/20/2025 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/20/2024

          *CLERK OF COURT*
                             OR
                                                       /s/Anthony J. Patek/

               *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiff
Everett Bloom                                , who issues or requests this subpoena, are:

Anthony J. Patek, 100 Pine St., Suite 1250, San Francisco, CA 94111, anthony@gutridesafier.com, 415-639-9090

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:22-cv-00412-RFB-BNW

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                              .

❏ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                         ; or

❏ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $              for travel and $              for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar No. 12440)
  David@Markmanlawfirm.com
4484 S. Pecos Rd., Suite #130
Las Vegas, NV 89121
Telephone: (702) 843-5899
Facsimile:  (702) 843-6010

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (admitted *pro hac vice*)
  seth@gutridesafier.com
MARIE A. MCCRARY (admitted *pro hac vice*)
  marie@gutridesafier.com
ANTHONY J. PATEK (admitted *pro hac vice*)
  anthony@gutridesafier.com
HAYLEY REYNOLDS (admitted *pro hac vice*)
  hayley@gutridesafier.com
KALI BACKER (admitted *pro hac vice*)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EVERETT BLOOM, JACK GRAHAM, AND DAVID LINDHOLM, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUFFA, LLC,<br><br>Defendant. | CASE NO. 2:22-cv-00412-RFB-BNW<br><br>**EXHIBIT A TO PLAINTIFF'S THIRD AMENDED SUBPOENA ON META PLATFORMS, INC.** |

- 1 -
EXHIBIT A TO 3RD AM. SUBPOENA TO META PLATFORMS – CASE NO. 2:22-cv-00412-RFB-BNW

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The definitions below are incorporated into each Request for Production. YOU are directed to respond to each Request for Production of documents as if the definitions were set forth therein.

1.    "AND/OR" or "and/or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

2.    The terms "ANY," "any," "ALL," "all," "EACH" and "each" shall each mean and include the other and shall be read in the conjunctive and not in the disjunctive wherever they appear, and none of these words shall be interpreted to limit the scope of a request. Furthermore, the use of a verb in any tense shall be construed as the use of the verb in all other tenses and the singular form shall be deemed to include the plural, and vice-versa.

3.    The term "CLASS PERIOD" means March 4, 2018 through the present.

4.    The term "COMMUNICATION" or "COMMUNICATIONS" shall mean, without limitation, ANY transmittal, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand, question or other information by ANY medium, whether by written, oral or other means, INCLUDING but not limited to letters, electronic COMMUNICATIONS and electronic mail.

5.    The term "DATA TRANSFER" or "DATA TRANSFERS" refers to files or messages created by YOU or on YOUR behalf to communicate SUBSCRIBER DATA to ANY third party or instrumentality thereof, including without limitation computer servers and other instrumentalities controlled by FACEBOOK.

6.    The terms "DOCUMENT" or "DOCUMENTS" shall have the meaning set forth in Federal Rule of Civil Procedure 34(a). DOCUMENT shall be interpreted in the broadest sense, and shall include ESI, ALL original DOCUMENTS, or a true copy thereof, together with each and every DRAFT and non-identical copy thereof (whether by reason of revisions, notations made thereon, or otherwise). As used herein the term document also includes ANY DOCUMENT, which did exist, but as of the date of response and production has been destroyed,

lost, misplaced, or is otherwise unavailable. For ANY such DOCUMENT, the response must to the extent possible IDENTIFY the DOCUMENT by date, subject matter, author, addressee, and persons to whom the DOCUMENT was distributed; must state whether the DOCUMENT was lost, destroyed, or misplaced; and must state the name and address of the person who last had custody of or knowledge of the existence of the DOCUMENT.

7.    The terms "DRAFT" or "DRAFTS" shall mean any work in process, preliminary version, redlined DOCUMENT, or any final version of a DOCUMENT that was later replaced or updated.

8.    The terms "ELECTRONICALLY STORED INFORMATION" or "ESI" shall mean shall mean all electronically-stored information and shall include, without limitation, all writings, drawings, graphs, charts, photographs, sound recordings, images, power point presentations, electronic mail INCLUDING electronic DOCUMENTS attached thereto, entries in social media or blogs, internal system-wide platform communications such as internal blogs, intranets, Slack, instant messaging and bulletin boards, voicemail recordings or transcripts, and other data or data compilations stored as an "active" file or files (readily readable by one or more computer applications or forensic software) in any medium from which information can be obtained, INCLUDING, without limitation, local or remote servers, the cloud, computers' hard drives, peripheral storage devices (disks and backup tapes), thumbdrives, laptops, cellphones, smart phones and other handheld computing devices. ESI also includes any "deleted" files on said media, and any electronic file fragments (files that have been deleted and partially overwritten with new data).

9.    Any ESI, electronic records or computerized information must be produced in an intelligible format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible. PLAINTIFF requests that all ESI be produced in their native electronic format together with all metadata and other information associated with each DOCUMENT in its native electronic format on CD-ROM disks, through a cloud service, or through other mutually agreeable method. Further, PLAINTIFF requests that all ESI be produced in the manner as set forth in any ESI Order entered by the Court

EXHIBIT A TO 3RD AM. SUBPOENA TO META PLATFORMS – CASE NO. 2:22-cv-00412-RFB-BNW

or, in the absence of such order, as allowed under the Local Rules of District of Nevada. For ESI that exists only in proprietary software or in a format that is not readable by a personal computer using commercially available software, PLAINTIFF requests that DEFENDANT IDENTIFY the specific information, the software at issue and possible alternative electronic formats in which the information could be produced such that the parties can meet and confer respecting how best to produce the specific information at issue. In producing responsive emails, DEFENDANT shall produce such emails without alteration of any kind; threads, attachments, and metadata associated with emails in particular should not be modified, deleted, or altered in any respect.

10. The term "FACEBOOK" refers to Meta Platforms, Inc., formerly known as Facebook, Inc., including its officers, directors, trustees, agents, employees, staff members, and paid consultants; ANY predecessor, successor, parent, subsidiary, or division.

11. The term "FACEBOOK CODE" means ANY software code that can transmit SUBSCRIBER DATA to FACEBOOK.

12. "FIGHT PASS WEBSITE" means ALL webpages on the UFC FIGHT PASS website, including web pages hosting video content.

13. The terms "INCLUDE," "INCLUDES," and "INCLUDING" shall include by reference without limitation.

14. The term "PLAINTIFF" means Everett Bloom, registered as a Facebook user with Facebook ID[1] 10215788037852716; Jack Graham, registered as a Facebook user with Facebook ID THAGRAHAMCRACKER; David Lindholm, registered as a Facebook user with Facebook ID 100005027656103; AND/OR ANY other Plaintiff who joins and/or intervenes in THIS ACTION in the future, including Juan Lozano.

15. The terms "REGARDING," "RELATES," "RELATE," "RELATED TO" and

_____

[1] This notice uses "FACEBOOK ID" and "Meta ID" (and FACEBOOK pixel and Meta Pixel) interchangeably, with the understanding that they are essentially identical, but for the change in name of the business entity that implemented them.

EXHIBIT A TO 3RD AM. SUBPOENA TO META PLATFORMS – CASE NO. 2:22-cv-00412-RFB-BNW

EXHIBIT 3

GUTRIDE SAFIER
▊▊▐▐▐▊▐▐▊▐▐▊▊▐▐▐▐▊▐▐▊▊▐▐▐▐▊▊
Attorneys at Law

Anthony Patek <anthony@gutridesafier.com>

## RE: Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook

1 message

**Edelstein, Laurie J.** <LEdelstein@jenner.com>                Mon, Nov 25, 2024 at 3:55 PM
To: Anthony Patek <anthony@gutridesafier.com>
Cc: "Rabbani, Ali" <alirabbani@paulhastings.com>, Anthony Patek <tony@gutridesafier.com>, ufc
<ufc@gutridesafier.com>, "Leader, Susan" <susanleader@paulhastings.com>, "Zielinski, Paige E."
<PZielinski@jenner.com>, "Carrero, Jacquellena T." <JCarrero@jenner.com>

Anthony,


We are puzzled why plaintiffs would be serving another document subpoena and another *deposition* subpoena on
Meta given your representation that the Court plans to issue an order requiring the production of a sample of
class data and the appearance of a Meta witness at the hearing scheduled for February 20, 2025.   We would
appreciate if you could explain the purpose of the subpoenas.


In the meantime, we do not agree to accept service.


Thanks,

Laurie




**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Friday, November 22, 2024 12:54 PM
**To:** Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Rabbani, Ali <alirabbani@paulhastings.com>; Anthony Patek <tony@gutridesafier.com>; ufc
<ufc@gutridesafier.com>; Leader, Susan <susanleader@paulhastings.com>; Zielinski, Paige E.
<PZielinski@jenner.com>; Carrero, Jacquellena T. <JCarrero@jenner.com>
**Subject:** Re: Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook


**External Email - Do Not Click** Links or Attachments Unless You Know They Are Safe

Laurie,


We are trying to obtain one, but have not yet received all the reporter info from the Court.  We will send a relevant
portion of the transcript when we get it, and/or the relevant Court order once it issues.


Regards,

Anthony

On Fri, Nov 22, 2024, 10:46 AM Edelstein, Laurie J. <LEdelstein@jenner.com> wrote:

Ali and Anthony,

We would appreciate if you could send us a copy of the transcript from the class certification hearing on November 19, 2024.

Thanks,

Laurie

**Laurie J. Edelstein**

**Jenner & Block LLP**
525 Market Street
29th Floor
San Francisco, CA 94105-2708  |  jenner.com
+1 415 293 5943  |  Tel
+1 415 730 4029  |  Mobile
LEdelstein@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system

**From:** Rabbani, Ali <alirabbani@paulhastings.com>
**Sent:** Thursday, November 21, 2024 4:43 PM
**To:** Anthony Patek <tony@gutridesafier.com>; ufc <ufc@gutridesafier.com>; Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Leader, Susan <susanleader@paulhastings.com>
**Subject:** RE: Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook

**External Email - Do Not Click** Links or Attachments Unless You Know They Are Safe

Counsel,

We received notice of Plaintiffs' Third Amended Subpoena to Meta yesterday afternoon.  We reserve the right to comment and/or object.  In the meantime, we reiterate our request to be copied on all communications relating to Plaintiffs' subpoenas to Meta.  If there has been any correspondence between Plaintiffs' counsel and Meta's counsel relating to the subpoena prior to this date that we have not been copied on, we ask that those communications be sent to us and that you copy us on all communications going forward. Thank you.

**Ali Rabbani | Of Counsel**
Paul Hastings LLP | 1999 Avenue of the Stars, 27th Floor, Century City, CA 90067
Direct: 310.620.5755 | Mobile: 310.745.3647

**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Wednesday, November 20, 2024 4:06 PM
**To:** Rabbani, Ali <alirabbani@paulhastings.com>; Leader, Susan <susanleader@paulhastings.com>; Colby Williams <jcw@cwlawlv.com>
**Cc:** ufc <ufc@gutridesafier.com>
**Subject:** [EXT] Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook

Counsel -

Attached, please see Notice of Plaintiffs' 3rd Amended Subpoena to Meta Platforms, Inc.

Regards,

**Anthony J. Patek**

Gutride Safier LLP

100 Pine Street, Suite 1250

San Francisco, CA 94111

anthony@gutridesafier.com

Ph: (415) 639-9090

M: (415) 505-6226

*********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

EXHIBIT 4



GUTRIDE SAFIER
Attorneys at Law

Anthony Patek <anthony@gutridesafier.com>

## Everett et al. v Zuffa - Notice of Subpoena to Appear at Hearing
1 message

**Anthony Patek** <anthony@gutridesafier.com>                    Thu, Dec 12, 2024 at 1:12 PM
To: "Rabbani, Ali" <alirabbani@paulhastings.com>, "Leader, Susan" <susanleader@paulhastings.com>, "Balitzer, Stephanie" <stephaniebalitzer@paulhastings.com>, Colby Williams <jcw@cwlawlv.com>
Cc: ufc <ufc@gutridesafier.com>, "Edelstein, Laurie J." <ledelstein@jenner.com>

Counsel -

Please see attached notice of subpoena to appear at trial for Meta Platforms, Inc., which includes a request for production of pixel data. Meta's counsel is cc'd as a courtesy; formal service will follow.

Regards,

**Anthony J. Patek**

Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
anthony@gutridesafier.com
Ph: (415) 639-9090
M:  (415) 505-6226

---

**2 attachments**

📄 **Notice of Subpoena to Meta to Appear at Hearing .pdf**
83K

📄 **Subpoena to Meta to Appear at Hearing (Bloom v. Zuffa).pdf**
782K

**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar No. 12440)
  David@Markmanlawfirm.com
4484 S. Pecos Rd., Suite #130
Las Vegas, NV 89121
Telephone: (702) 843-5899
Facsimile:  (702) 843-6010

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (admitted *pro hac vice*)
  seth@gutridesafier.com
MARIE A. MCCRARY (admitted *pro hac vice*)
  marie@gutridesafier.com
ANTHONY J. PATEK (admitted *pro hac vice*)
  anthony@gutridesafier.com
HAYLEY REYNOLDS (admitted *pro hac vice*)
  hayley@gutridesafier.com
KALI BACKER (admitted *pro hac vice*)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| EVERETT BLOOM, an individual, on behalf of himself, the general public, and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ZUFFA, LLC, <br><br> Defendant. | CASE NO. 2:22-cv-00412-RFB-BNW <br><br><br> **NOTICE OF SUBPOENA TO APPEAR AT HEARING FOR META PLATFORMS, INC., D.B.A. FACEBOOK INC.** |

PLAINTIFFS' NOTICE OF SUBPOENA TO APPEAR AT HEARING TO META

**PROPOUNDING PARTY:   PLAINTIFFS**

**RESPONDING PARTY:      FACEBOOK, INC.**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE, that pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiffs intend to serve the attached Subpoena to Appear at Trial or Hearing upon Meta Platforms, Inc., d/b/a/ Facebook, Inc. Please take further notice that Plaintiffs' subpoena requests production of documents.

Dated: December 12, 2024                  **GUTRIDE SAFIER LLP**

　　　　　　　　　　　　　　　　　　　　　 ___/s/Anthony J. Patek___
　　　　　　　　　　　　　　　　　　　　　 ANTHONY J. PATEK (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　 anthony@gutridesafier.com
　　　　　　　　　　　　　　　　　　　　　 100 Pine Street, Suite 1250
　　　　　　　　　　　　　　　　　　　　　 San Francisco, CA 94111
　　　　　　　　　　　　　　　　　　　　　 Telephone: (415) 336-6545
　　　　　　　　　　　　　　　　　　　　　 Facsimile: (415) 449-6469

　　　　　　　　　　　　　　　　　　　　　 *Attorneys for Plaintiffs*

PLAINTIFFS' NOTICE OF SUBPOENA APPEAR AT HEARING TO META

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | |
|---|---|
| Everett Bloom, Jack Graham, and David Lindholm | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   2:22-cv-00412-RFB-BNW |
| Zuffa LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:   Meta Platform, Inc., d/b/a Facebook
1601 Willow Road, Menlo Park, CA 94025

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: Lloyd D. George U.S. Courthouse 333 S. Las Vegas Blvd. Las Vegas, NV 89101 | Courtroom No.: 7C (Hon. Richard F. Boulware) |
|---|---|
| | Date and Time: 02/20/2025 9:15 am |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

DOCUMENTS sufficient to show all pixel event records in FACEBOOK'S (a.k.a. Meta Platforms, Inc.'s) possession for pixel events associated with Zuffa LLC (including those associated with Meta pixel IDs 1187589367948603; 1160489023965390; 1676148929325324; 764176390811447; 509857726552711; and 626274810874103) on the following dates: September 17, 2021; April 9, 2022; and May 2, 2022. Per court order, documents shall be produced to the Court in electronic form on a flash drive.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/12/2024

         *CLERK OF COURT*

                              OR

                                                 /s/Anthony J. Patek/

             *Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs Everett Bloom, Jack Graham, and David Lindholm  , who issues or requests this subpoena, are:

Anthony J. Patek, Gutride Safier LLP, 100 Pine Street, Suite 1250, San Francisco, CA 94111, anthony@gutridesafier.com, (415) 505-6226

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88  (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No.  2:22-cv-00412-RFB-BNW

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

    **(i)** is a party or a party's officer; or

    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and

    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

EXHIBIT 5

GUTRIDE SAFIER
▪ ▪▪ ▪▪▪ ▪▪▪▪▪▪▪ ▪ ▪▪ ▪▪ ▪▪▪▪ ▪▪
Attorneys at Law

Anthony Patek <anthony@gutridesafier.com>

---

## Re: Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook
1 message

**Anthony Patek** <anthony@gutridesafier.com>                    Fri, Dec 13, 2024 at 10:12 AM
To: "Edelstein, Laurie J." <LEdelstein@jenner.com>
Cc: "Rabbani, Ali" <alirabbani@paulhastings.com>, Anthony Patek <tony@gutridesafier.com>, ufc
<ufc@gutridesafier.com>, "Leader, Susan" <susanleader@paulhastings.com>, "Zielinski, Paige E."
<PZielinski@jenner.com>, "Carrero, Jacquellena T." <JCarrero@jenner.com>

Laurie -

Per my separate email, Plaintiffs are serving a subpoena to appear at trial or hearing for the evidentiary hearing
ordered by Judge Boulware. That subpoena will replace the subpoena for deposition testimony. However, as the
subpoena to appear at the hearing merely requires Meta to bring the requested documents to the hearing, but the
parties will need that data at least a few weeks earlier in order to prepare their testimony, the subpoena for production
of documents requesting that information is still appropriate. I'm happy to meet and confer to facilitate that production
and its timing.

Regards,

**Anthony J. Patek**

Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
anthony@gutridesafier.com
Ph: (415) 639-9090
M: (415) 505-6226

On Mon, Nov 25, 2024 at 3:56 PM Edelstein, Laurie J. <LEdelstein@jenner.com> wrote:

Anthony,

We are puzzled why plaintiffs would be serving another document subpoena and another *deposition* subpoena
on Meta given your representation that the Court plans to issue an order requiring the production of a sample
of class data and the appearance of a Meta witness at the hearing scheduled for February 20, 2025. We would
appreciate if you could explain the purpose of the subpoenas.

In the meantime, we do not agree to accept service.

Thanks,

Laurie

**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Friday, November 22, 2024 12:54 PM
**To:** Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Rabbani, Ali <alirabbani@paulhastings.com>; Anthony Patek <tony@gutridesafier.com>; ufc <ufc@gutridesafier.com>; Leader, Susan <susanleader@paulhastings.com>; Zielinski, Paige E. <PZielinski@jenner.com>; Carrero, Jacquellena T. <JCarrero@jenner.com>
**Subject:** Re: Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook

External Email - **Do Not Click** Links or Attachments Unless You Know They Are Safe

Laurie,

We are trying to obtain one, but have not yet received all the reporter info from the Court. We will send a relevant portion of the transcript when we get it, and/or the relevant Court order once it issues.

Regards,

Anthony

On Fri, Nov 22, 2024, 10:46 AM Edelstein, Laurie J. <LEdelstein@jenner.com> wrote:

Ali and Anthony,

We would appreciate if you could send us a copy of the transcript from the class certification hearing on November 19, 2024.

Thanks,

Laurie

**Laurie J. Edelstein**

**Jenner & Block LLP**
525 Market Street
29th Floor
San Francisco, CA 94105-2708  |  jenner.com
+1 415 293 5943  |  Tel
+1 415 730 4029  |  Mobile
LEdelstein@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system

**From:** Rabbani, Ali <alirabbani@paulhastings.com>
**Sent:** Thursday, November 21, 2024 4:43 PM
**To:** Anthony Patek <tony@gutridesafier.com>; ufc <ufc@gutridesafier.com>; Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Leader, Susan <susanleader@paulhastings.com>
**Subject:** RE: Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook

External Email - **Do Not Click** Links or Attachments Unless You Know They Are Safe

Counsel,

We received notice of Plaintiffs' Third Amended Subpoena to Meta yesterday afternoon. We reserve the right to comment and/or object. In the meantime, we reiterate our request to be copied on all communications relating to Plaintiffs' subpoenas to Meta. If there has been any correspondence between Plaintiffs' counsel and Meta's counsel relating to the subpoena prior to this date that we have not been copied on, we ask that those communications be sent to us and that you copy us on all communications going forward. Thank you.

**Ali Rabbani | Of Counsel**
Paul Hastings LLP | 1999 Avenue of the Stars, 27th Floor, Century City, CA 90067
Direct: 310.620.5755 | Mobile: 310.745.3647

**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Wednesday, November 20, 2024 4:06 PM
**To:** Rabbani, Ali <alirabbani@paulhastings.com>; Leader, Susan <susanleader@paulhastings.com>; Colby Williams <jcw@cwlawlv.com>
**Cc:** ufc <ufc@gutridesafier.com>
**Subject:** [EXT] Bloom v. Zuffa - Notice of 3rd Amended Subpoena to Facebook

Counsel -

Attached, please see Notice of Plaintiffs' 3rd Amended Subpoena to Meta Platforms, Inc.

Regards,

**Anthony J. Patek**

Gutride Safier LLP

100 Pine Street, Suite 1250

San Francisco, CA 94111

anthony@gutridesafier.com

Ph: (415) 639-9090

M:  (415) 505-6226

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

EXHIBIT 6

GUTRIDE SAFIER

Attorneys at Law

Anthony Patek <anthony@gutridesafier.com>

## Bloom v. Zuffa, 22 Civ. 412 (D. Nev.): Meta's Resp. + Objs. to Pls. Third Am. Subpoena
1 message

**Edelstein, Laurie J.** <LEdelstein@jenner.com>                        Mon, Dec 16, 2024 at 6:11 PM
To: Anthony Patek <anthony@gutridesafier.com>
Cc: "Rabbani, Ali" <alirabbani@paulhastings.com>, ufc <ufc@gutridesafier.com>, "Leader, Susan"
<susanleader@paulhastings.com>, "Zielinski, Paige E." <PZielinski@jenner.com>, "Carrero, Jacquellena T."
<JCarrero@jenner.com>

Anthony,


Please find attached Meta Platforms, Inc.'s response and objections to the third amended subpoena for
documents plaintiffs served on Meta in *Bloom* v. *Zuffa*, 22 Civ. 412 (D. Nev.).


Thanks,

Laurie


**Laurie J. Edelstein**

**Jenner & Block LLP**
525 Market Street
29th Floor
San Francisco, CA 94105-2708  |  jenner.com
+1 415 293 5943  |  Tel
+1 415 730 4029  |  Mobile
LEdelstein@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of
the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that
you have received this email in error, please notify the sender immediately and delete it from your system

📄 **2024-12-16 Meta's Resp. + Objs. to Pls. Third Am. Doc. Subpoena.pdf**
   467K

525 MARKET STREET 29TH FLOOR SAN FRANCISCO, CA 94105

# JENNER&BLOCK LLP

Laurie Edelstein
Tel +1 415 293 5943
LEdelstein@jenner.com

December 16, 2024

**BY ELECTRONIC MAIL**

Anthony J. Patek
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
anthony@gutridesafier.com

> Re:    *Bloom* v. *Zuffa, LLC*, No. 22 Civ. 412 (D. Nev.): "Third Amended"
> Subpoena to Meta for Production of Documents

Dear Anthony,

We write in response to the so-called "third amended" subpoena for the production of documents served on Meta Platforms, Inc. ("Meta") on December 2, 2024 (the "Subpoena") by the plaintiffs in *Bloom* v. *Zuffa, LLC*, No. 22 Civ. 412 (D. Nev.), a litigation to which Meta is not a party.[1]  Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), Meta hereby serves its objections to the Subpoena.

Meta understands the "third amended" subpoena to incorporate plaintiffs' prior subpoenas and requests for production in this matter to which Meta already has responded and to set forth a new "amended" request for production – Request No. 6(a).  Meta incorporates by reference and reasserts its prior objections to plaintiffs' previous subpoenas for documents set forth in Meta's letters dated January 17, 2024 and March 6, 2024.  Meta addresses here only plaintiffs' Request No. 6(a), which seeks documents "sufficient to show all pixel event records in FACEBOOK'S (a.k.a. Meta Platforms, Inc.'s) possession for pixel events associated with Zuffa LLC (including those associated with Meta pixel IDs 1187589367948603; 1160489023965390; 1676148929325324; 764176390811447; 509857726552711; and 626274810874103) on the following dates: September 17, 2021 (Bloom watching live event on PC); April 9, 2022 (Lindholm on mobile), May 2, 2022 (Graham on Mac Desktop)."

**General Objections to Subpoena**

Meta objects to the Subpoena generally on the grounds that any further discovery directed towards Meta is unwarranted.  Meta is not a party and has no reason to anticipate

---

[1] Plaintiffs' proof of service incorrectly states Meta was served on November 20, 2024 via email. However, Meta declined to accept service by email and informed plaintiffs to serve the Subpoena on its registered agent.  Meta's registered agent was served on December 2, 2024.

December 16, 2024
Page 2

becoming a party to the suit plaintiffs have filed against Zuffa, LLC ("Zuffa"), alleging that Zuffa violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). The amended complaint does not allege that Meta violated the VPPA or any other law, or that Meta is otherwise subject to liability. On August 21, 2023 and January 23, 2024, Meta produced documents responsive to plaintiffs' December 15, 2022 subpoena per Meta's and plaintiffs' agreement. On January 25, 2024, Meta produced a deposition witness to provide testimony on relevant topics. Although the scope of permissible discovery pursued from a party opponent is broad, "permissible discovery from nonparties is narrower than that permitted from parties to the action." *Fed. Trade Comm'n* v. *DIRECTV, Inc.*, No. 15 Civ. 1129, 2015 WL 8302932, at *4 (N.D. Cal. Dec. 9, 2015); *see also Dart* v. *Indus. Co., Inc.* v. *Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980). There is no basis for seeking further discovery from Meta, a non-party.

Meta further objects to Request No. 6(a) to the extent it is not relevant to the claims and defenses at issue in the case; it is vague, overbroad in scope, and unduly burdensome; and not proportional to the needs of the case. Requests for production served on non-parties must be relevant, proportional to the needs of the case, and within the bounds of permissible discovery. Moreover, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Meta further objects to Request No. 6(a) to the extent it seeks information that is confidential to any third party, which Meta is obligated not to disclose. Meta also objects to Request No. 6(a) to the extent it seeks documents or information regarding trade or business secrets or other confidential, proprietary, or sensitive business information. Meta further objects to Request No. 6(a) to the extent it seeks documents or information that is readily obtainable from other sources. Meta also objects to the extent Request No. 6(a) seeks documents or information protected, in whole or in part, by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, legal protection, or rule of confidentiality.

**Specific Objections to Request No. 6(a)**

Request No. 6(a) is overbroad and not proportional to the needs of the case in that it seeks "all pixel event records" on the dates listed and is not directed to the disclosure of personally identifiable information within the meaning of the VPPA. Request No. 6(a) also is overbroad in that it seeks information concerning all persons whose personally identifiable information was allegedly disclosed to Meta, including individuals whom plaintiffs do not represent given that no class has yet been certified.

*       *       *

Plaintiffs included with its document subpoena a subpoena for deposition testimony. However, plaintiffs informed Meta on December 13, 2024 that they will be serving a separate

December 16, 2024
Page 3

subpoena on Meta's agent for service of process for Meta to appear at trial or hearing for the evidentiary hearing set for January 20, 2025 and the trial subpoena will replace the subpoena for deposition testimony. Accordingly, Meta considers the deposition subpoena to be withdrawn. Meta will respond to any trial subpoena served on its agent for service of process in accordance with Rule 45 of the Federal Rules of Civil Procedure.

Meta reserves the right to supplement this response and objections to the Subpoena at a later date. This response also is made without waiver of Meta's rights, remedies, and defenses, which are expressly reserved, including the right to seek costs.

Sincerely,

Laurie Edelstein

Laurie Edelstein

EXHIBIT 6

GUTRIDE SAFIER
████ ████ █████ █ ██ ██████ █
Attorneys at Law

**Anthony Patek <anthony@gutridesafier.com>**

---

## RE: Bloom v. Zuffa - Subpoenas to Meta

1 message

---

**Edelstein, Laurie J.** <LEdelstein@jenner.com>                    Fri, Dec 20, 2024 at 3:53 PM
To: Anthony Patek <anthony@gutridesafier.com>
Cc: "Rabbani, Ali" <alirabbani@paulhastings.com>, ufc <ufc@gutridesafier.com>, "Leader, Susan"
<susanleader@paulhastings.com>, "Zielinski, Paige E." <PZielinski@jenner.com>, "Carrero, Jacquellena T."
<JCarrero@jenner.com>

Anthony,


Thank you for your message.   Would you be able to provide additional information regarding service of the trial
subpoena – for example, to whom was the mail addressed and when was it delivered?


With respect to the production of data:


- Meta will search for Pixel event data transmitted to Meta through Pixel IDs 1187589367948603;
  1160489023965390; 1676148929325324; 764176390811447; 509857726552711; and 626274810874103
  on September 17, 2021, April 9, 2022, and May 2, 2022.
    - To the extent data exists, Meta will produce up to 100,000 rows of Pixel event data per Pixel ID per
      day for a total of up to 300,000 rows of Pixel event data per Pixel ID over the three days and up to
      1,800,000 rows of Pixel event data overall across Pixel IDs and days.
- Meta is targeting production of the data by February 7, 2025.


Thanks,

Laurie


---

**Laurie J. Edelstein**

**Jenner & Block LLP**
525 Market Street
29th Floor
San Francisco, CA 94105-2708   |   jenner.com
+1 415 293 5943   |   Tel
+1 415 730 4029   |   Mobile
LEdelstein@jenner.com
Download V-Card   |   View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of
the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that
you have received this email in error, please notify the sender immediately and delete it from your system

**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Friday, December 20, 2024 2:40 PM
**To:** Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Rabbani, Ali <alirabbani@paulhastings.com>; ufc <ufc@gutridesafier.com>; Leader, Susan <susanleader@paulhastings.com>
**Subject:** Bloom v. Zuffa - Subpoenas to Meta

**External Email - Do Not Click** Links or Attachments Unless You Know They Are Safe

Laurie

USPS tracking indicates that at least two copies of the subpoena to appear at the hearing have been delivered. See tracking numbers 9589071052701772090685 and 9589071052701772090678. Let me know when you expect to send Meta's written response and objection.

Also, do you have an estimated extension for production of the pixel data that I can provide to Judge Boulware?

Regards,

**Anthony J. Patek**

Gutride Safier LLP

100 Pine Street, Suite 1250

San Francisco, CA 94111

anthony@gutridesafier.com

Ph: (415) 639-9090

M: (415) 505-6226

525 MARKET STREET 29TH FLOOR SAN FRANCISCO, CA 94105

# JENNER&BLOCK LLP

Laurie Edelstein
Tel +1 415 293 5943
LEdelstein@jenner.com

January 6, 2025

**BY ELECTRONIC MAIL**

Anthony J. Patek
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
anthony@gutridesafier.com

> Re:  *Bloom* v. *Zuffa, LLC*, No. 22 Civ. 412 (D. Nev.): Subpoena to Meta to Appear and Testify at a Hearing and to Produce Documents

Dear Anthony,

We write in response to the subpoena for testimony and production of documents (the "Subpoena") served on Meta Platforms, Inc. ("Meta") on December 23, 2024 by the plaintiffs in *Bloom* v. *Zuffa, LLC*, No. 22 Civ. 412 (D. Nev.), a litigation to which Meta is not a party. Meta objects to the Subpoena's demand that non-party Meta appear in the United States District Court for the District of Nevada in Las Vegas, Nevada to testify at a hearing on February 20, 2025 and produce documents on the grounds that the Subpoena does not comply with the geographic limits in Federal Rule of Civil Procedure 45(c).

Meta met and conferred with the parties in this matter on December 18, 2024 and informed them it intended to contest a subpoena to testify at the February 20, 2025 hearing once served. Meta agreed to set forth its objections in writing. Meta's position is below with supporting authority.

Rule 45(c)(1)(A) provides that a person can be commanded to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). A person also can be commanded to attend a trial, hearing, or deposition "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). If a trial subpoena exceeds these geographic limits, "the district court '*must* quash or modify' the subpoena." *In re Kirkland*, 75 F.4th 1030, 1042 (9th Cir. 2023) (quoting Fed. R. Civ. P. 45(d)(3)(A)(ii)) (emphasis in *Kirkland*).

January 6, 2025
Page 2

The Ninth Circuit has made clear that Rule 45(c) imposes strict geographic limits on a federal court's power to compel a witness to testify: a person cannot be compelled to testify if they are "located further from the courthouse than Rule 45 proscribes." *In re Kirkland*, 75 F.4th at 1046. Courts in this Circuit thus consistently have quashed subpoenas where, as here, "the only knowledgeable representatives would have to travel more than 100 miles to provide testimony." *Netlist, Inc.* v. *Montage Tech., Inc.*, No. 22 MC 80337, 2023 WL 2940043, at *6 (N.D. Cal. Feb. 24, 2023); *see also Owlink Tech., Inc.* v. *Cypress Tech. Co.*, No. 21 Civ. 717, 2023 WL 4291822, at *1-3 (C.D. Cal. May 11, 2023) (denying plaintiffs' motion to compel witnesses to travel more than 100 miles to appear live at trial because witnesses were outside the court's subpoena power); *Issagholi* v. *McLaren Auto., Inc.*, 19 Civ. 7616, 2021 WL 4352297, at *1 (C.D. Cal. July 9, 2021) (granting motion to quash subpoena seeking trial testimony in California where non-party witness lived in Texas and did not regularly transact business in California).

Here, the subpoena is a demand for Meta to appear at an evidentiary hearing in this litigation; it is not a trial subpoena. Meta also is not a party to the litigation. The geographic limits in Rule 45(c)(1)(A) thus apply. Meta's headquarters, however, are in Menlo Park, California, more than 100 miles from Las Vegas, Nevada. Meta does not have an office in Nevada and does not have a representative knowledgeable about the subject matter of this action within 100 miles of Las Vegas, Nevada. Meta thus is outside the subpoena power of the Court and cannot be compelled to testify at a hearing in this matter in the United States District Court for the District of Nevada in Las Vegas, Nevada.

Moreover, Meta already has produced a witness for a deposition in this matter in response to a deposition subpoena that complied with Rule 45's geographic limits. On January 25, 2024, Meta's witness provided a full day of thorough and complete testimony on a broad range of topics. These topics included: "[t]he types of Event Data that Meta receives through the Meta Pixel and the data fields reflected in the data Meta has produced," "[w]hether and how a Facebook user's operating system and/or web browser setting affects the transmission of Event Data to Meta," and "Event Data that Meta received from Zuffa via the Meta Pixel, including Event Data related to the Plaintiffs, on or after June 19, 2021." *See* Dep. Tr. of T. Wooldridge at 14:7-17:20 (Jan. 25, 2024).

Meta also objects to the Subpoena's demand that Meta produce documents at the United States District Court for the District of Nevada in Las Vegas, Nevada. Federal Rule of Civil Procedure 45(c)(2)(B) provides that a subpoena may command the production of documents and electronically stored information "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Again, Meta's Menlo Park, California headquarters is more than 100 miles from Las Vegas, Nevada. As such, the subpoena "is invalid." *Williams* v. *Camden USA Inc.*, No. 19 Civ. 691, 2021 WL 5417516, at *1 (S.D. Cal. Nov. 19, 2021); *see also GreenLake Real Est. Fund LLC* v. *Waid*, No. 24 MC 00040, 2024 WL 3009015, at *2 (C.D. Cal. Apr. 11, 2024) (granting motion to quash where subpoena commanded

January 6, 2025
Page 3

production of documents more than 100 miles from corporate residency, where its officers and employees worked, and where it regularly transacted business in person).

Meta notes that plaintiffs also served a "third amended" subpoena for the production of documents that seeks the same data as this Subpoena but with a place of compliance that complies with the geographic limits of Rule 45(c)(2)(B). Meta has reached an agreement with plaintiffs regarding the scope of data for which Meta intends to search and produce, to the extent it exists, in response to the "third amended" subpoena. In addition, Meta already has made two prior productions in this matter.

Meta is a not a party to this litigation. It nonetheless has made every effort to cooperate with plaintiffs' multiple discovery demands spanning two years. Despite its non-party status, Meta already has made two productions of data, agreed to search for and produce additional data to the extent it exists, and produced a witness for a day-long deposition during which he was questioned by both parties. The parties have had ample opportunity to seek discovery from Meta. There is no basis or authority that would require Meta to testify at a hearing outside the geographic limits of Rule 45(c).

Meta reserves the right to supplement this response and objections to the Subpoena at a later date. This response also is made without waiver of Meta's rights, remedies, and defenses, which are expressly reserved, including the right to move to quash the Subpoena and seek costs.

Sincerely,

Laurie Edelstein

Laurie Edelstein

EXHIBIT 6

GUTRIDE SAFIER

Attorneys at Law

Anthony Patek <anthony@gutridesafier.com>

## RE: Bloom v. Zuffa - Subpoenas to Meta

1 message

**Edelstein, Laurie J.** <LEdelstein@jenner.com>                    Fri, Dec 20, 2024 at 3:53 PM
To: Anthony Patek <anthony@gutridesafier.com>
Cc: "Rabbani, Ali" <alirabbani@paulhastings.com>, ufc <ufc@gutridesafier.com>, "Leader, Susan"
<susanleader@paulhastings.com>, "Zielinski, Paige E." <PZielinski@jenner.com>, "Carrero, Jacquellena T."
<JCarrero@jenner.com>

Anthony,

Thank you for your message.   Would you be able to provide additional information regarding service of the trial
subpoena – for example, to whom was the mail addressed and when was it delivered?

With respect to the production of data:

- Meta will search for Pixel event data transmitted to Meta through Pixel IDs 1187589367948603;
  1160489023965390; 1676148929325324; 764176390811447; 509857726552711; and 626274810874103
  on September 17, 2021, April 9, 2022, and May 2, 2022.
    - To the extent data exists, Meta will produce up to 100,000 rows of Pixel event data per Pixel ID per
      day for a total of up to 300,000 rows of Pixel event data per Pixel ID over the three days and up to
      1,800,000 rows of Pixel event data overall across Pixel IDs and days.
- Meta is targeting production of the data by February 7, 2025.

Thanks,

Laurie

**Laurie J. Edelstein**

**Jenner & Block LLP**
525 Market Street
29th Floor
San Francisco, CA 94105-2708  |  jenner.com
+1 415 293 5943  |  Tel
+1 415 730 4029  |  Mobile
LEdelstein@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of
the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that
you have received this email in error, please notify the sender immediately and delete it from your system

**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Friday, December 20, 2024 2:40 PM
**To:** Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Rabbani, Ali <alirabbani@paulhastings.com>; ufc <ufc@gutridesafier.com>; Leader, Susan <susanleader@paulhastings.com>
**Subject:** Bloom v. Zuffa - Subpoenas to Meta

External Email - **Do Not Click** Links or Attachments Unless You Know They Are Safe

Laurie

USPS tracking indicates that at least two copies of the subpoena to appear at the hearing have been delivered. See tracking numbers 9589071052701772090685 and 9589071052701772090678. Let me know when you expect to send Meta's written response and objection.

Also, do you have an estimated extension for production of the pixel data that I can provide to Judge Boulware?

Regards,

**Anthony J. Patek**

Gutride Safier LLP

100 Pine Street, Suite 1250

San Francisco, CA 94111

anthony@gutridesafier.com

Ph: (415) 639-9090

M: (415) 505-6226

525 MARKET STREET 29TH FLOOR SAN FRANCISCO, CA 94105

# JENNER&BLOCK LLP

Laurie Edelstein
Tel +1 415 293 5943
LEdelstein@jenner.com

January 6, 2025

**BY ELECTRONIC MAIL**

Anthony J. Patek
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
anthony@gutridesafier.com

Re:    *Bloom* v. *Zuffa, LLC*, No. 22 Civ. 412 (D. Nev.): Subpoena to Meta to
       Appear and Testify at a Hearing and to Produce Documents

Dear Anthony,

We write in response to the subpoena for testimony and production of documents (the "Subpoena") served on Meta Platforms, Inc. ("Meta") on December 23, 2024 by the plaintiffs in *Bloom* v. *Zuffa, LLC*, No. 22 Civ. 412 (D. Nev.), a litigation to which Meta is not a party. Meta objects to the Subpoena's demand that non-party Meta appear in the United States District Court for the District of Nevada in Las Vegas, Nevada to testify at a hearing on February 20, 2025 and produce documents on the grounds that the Subpoena does not comply with the geographic limits in Federal Rule of Civil Procedure 45(c).

Meta met and conferred with the parties in this matter on December 18, 2024 and informed them it intended to contest a subpoena to testify at the February 20, 2025 hearing once served. Meta agreed to set forth its objections in writing. Meta's position is below with supporting authority.

Rule 45(c)(1)(A) provides that a person can be commanded to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). A person also can be commanded to attend a trial, hearing, or deposition "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). If a trial subpoena exceeds these geographic limits, "the district court '*must* quash or modify' the subpoena." *In re Kirkland*, 75 F.4th 1030, 1042 (9th Cir. 2023) (quoting Fed. R. Civ. P. 45(d)(3)(A)(ii)) (emphasis in *Kirkland*).

January 6, 2025
Page 2

The Ninth Circuit has made clear that Rule 45(c) imposes strict geographic limits on a federal court's power to compel a witness to testify: a person cannot be compelled to testify if they are "located further from the courthouse than Rule 45 proscribes." *In re Kirkland*, 75 F.4th at 1046. Courts in this Circuit thus consistently have quashed subpoenas where, as here, "the only knowledgeable representatives would have to travel more than 100 miles to provide testimony." *Netlist, Inc.* v. *Montage Tech., Inc.*, No. 22 MC 80337, 2023 WL 2940043, at *6 (N.D. Cal. Feb. 24, 2023); *see also Owlink Tech., Inc.* v. *Cypress Tech. Co.*, No. 21 Civ. 717, 2023 WL 4291822, at *1-3 (C.D. Cal. May 11, 2023) (denying plaintiffs' motion to compel witnesses to travel more than 100 miles to appear live at trial because witnesses were outside the court's subpoena power); *Issagholi* v. *McLaren Auto., Inc.*, 19 Civ. 7616, 2021 WL 4352297, at *1 (C.D. Cal. July 9, 2021) (granting motion to quash subpoena seeking trial testimony in California where non-party witness lived in Texas and did not regularly transact business in California).

Here, the subpoena is a demand for Meta to appear at an evidentiary hearing in this litigation; it is not a trial subpoena. Meta also is not a party to the litigation. The geographic limits in Rule 45(c)(1)(A) thus apply. Meta's headquarters, however, are in Menlo Park, California, more than 100 miles from Las Vegas, Nevada. Meta does not have an office in Nevada and does not have a representative knowledgeable about the subject matter of this action within 100 miles of Las Vegas, Nevada. Meta thus is outside the subpoena power of the Court and cannot be compelled to testify at a hearing in this matter in the United States District Court for the District of Nevada in Las Vegas, Nevada.

Moreover, Meta already has produced a witness for a deposition in this matter in response to a deposition subpoena that complied with Rule 45's geographic limits. On January 25, 2024, Meta's witness provided a full day of thorough and complete testimony on a broad range of topics. These topics included: "[t]he types of Event Data that Meta receives through the Meta Pixel and the data fields reflected in the data Meta has produced," "[w]hether and how a Facebook user's operating system and/or web browser setting affects the transmission of Event Data to Meta," and "Event Data that Meta received from Zuffa via the Meta Pixel, including Event Data related to the Plaintiffs, on or after June 19, 2021." *See* Dep. Tr. of T. Wooldridge at 14:7-17:20 (Jan. 25, 2024).

Meta also objects to the Subpoena's demand that Meta produce documents at the United States District Court for the District of Nevada in Las Vegas, Nevada. Federal Rule of Civil Procedure 45(c)(2)(B) provides that a subpoena may command the production of documents and electronically stored information "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Again, Meta's Menlo Park, California headquarters is more than 100 miles from Las Vegas, Nevada. As such, the subpoena "is invalid." *Williams* v. *Camden USA Inc.*, No. 19 Civ. 691, 2021 WL 5417516, at *1 (S.D. Cal. Nov. 19, 2021); *see also GreenLake Real Est. Fund LLC* v. *Waid*, No. 24 MC 00040, 2024 WL 3009015, at *2 (C.D. Cal. Apr. 11, 2024) (granting motion to quash where subpoena commanded

January 6, 2025
Page 3

production of documents more than 100 miles from corporate residency, where its officers and employees worked, and where it regularly transacted business in person).

Meta notes that plaintiffs also served a "third amended" subpoena for the production of documents that seeks the same data as this Subpoena but with a place of compliance that complies with the geographic limits of Rule 45(c)(2)(B). Meta has reached an agreement with plaintiffs regarding the scope of data for which Meta intends to search and produce, to the extent it exists, in response to the "third amended" subpoena. In addition, Meta already has made two prior productions in this matter.

Meta is a not a party to this litigation. It nonetheless has made every effort to cooperate with plaintiffs' multiple discovery demands spanning two years. Despite its non-party status, Meta already has made two productions of data, agreed to search for and produce additional data to the extent it exists, and produced a witness for a day-long deposition during which he was questioned by both parties. The parties have had ample opportunity to seek discovery from Meta. There is no basis or authority that would require Meta to testify at a hearing outside the geographic limits of Rule 45(c).

Meta reserves the right to supplement this response and objections to the Subpoena at a later date. This response also is made without waiver of Meta's rights, remedies, and defenses, which are expressly reserved, including the right to move to quash the Subpoena and seek costs.

Sincerely,

Laurie Edelstein

EXHIBIT 8

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| Everett Bloom, Jack Graham, and David Lindholm | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   2:22-cv-00412-RFB-BNW |
| Zuffa LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:   Meta Platform, Inc., d/b/a Facebook
     1601 Willow Road, Menlo Park, CA 94025

*(Name of person to whom this subpoena is directed)*

    **YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place:   Lloyd D. George U.S. Courthouse<br>         333 S. Las Vegas Blvd.<br>         Las Vegas, NV 89101 | Courtroom No.: 7C (Hon. Richard F. Boulware)<br><br>Date and Time: 02/20/2025 9:15 am |
|---|---|

    You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

    DOCUMENTS sufficient to show all pixel event records in FACEBOOK'S (a.k.a. Meta Platforms, Inc.'s) possession for pixel events associated with Zuffa LLC (including those associated with Meta pixel IDs 1187589367948603; 1160489023965390; 1676148929325324; 764176390811447; 509857726552711; and 626274810874103) on the following dates: September 17, 2021; April 9, 2022; and May 2, 2022. Per court order, documents shall be produced to the Court in electronic form on a flash drive.

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     12/12/2024

             *CLERK OF COURT*

                                         OR

                                                 /s/Anthony J. Patek/

                 *Signature of Clerk or Deputy Clerk*                            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs Everett Bloom, Jack Graham, and David Lindholm   , who issues or requests this subpoena, are:

Anthony J. Patek, Gutride Safier LLP, 100 Pine Street, Suite 1250, San Francisco, CA 94111, anthony@gutridesafier.com, (415) 505-6226

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No. 2:22-cv-00412-RFB-BNW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____  ; or

❑ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).



# UNITED STATES
# POSTAL SERVICE.

RICHMOND HILL
9664 FORD AVE
RICHMOND HILL, GA 31324-9998
(800)275-8777

12/13/2024                          05:02 PM

| Product | Qty | Unit Price | Price |
| --- | --- | --- | --- |
| First-Class Mail® | 1 | | $0.73 |

Letter
    Menlo Park, CA 94025
    Weight: 0 lb 0.80 oz
    Estimated Delivery Date
        Wed 12/18/2024
    Certified Mail®                  $4.85
        Tracking #:
            9589 0710 5270 1772 0906 61

Total                                $5.58

First-Class Mail®    1               $0.73
Letter
    Menlo Park, CA 94025
    Weight: 0 lb 0.80 oz
    Estimated Delivery Date
        Wed 12/18/2024
    Certified Mail®                  $4.85
        Tracking #:
            9589 0710 5270 1772 0906 85

Total                                $5.58

First-Class Mail®    1               $0.73
Letter
    Sacramento, CA 95833
    Weight: 0 lb 0.70 oz
    Estimated Delivery Date
        Thu 12/19/2024
    Certified Mail®                  $4.85
        Tracking #:
            9589 0710 5270 1772 0906 78

Total                                $5.58

Grand Total:                        $16.74

EXHIBIT 9

GUTRIDE SAFIER

Attorneys at Law

**Anthony Patek <anthony@gutridesafier.com>**

## RE: Bloom v. Zuffa - Subpoenas to Meta

1 message

**Edelstein, Laurie J.** <LEdelstein@jenner.com>                Mon, Jan 6, 2025 at 9:10 PM
To: Anthony Patek <anthony@gutridesafier.com>
Cc: "Rabbani, Ali" <alirabbani@paulhastings.com>, ufc <ufc@gutridesafier.com>, "Leader, Susan"
<susanleader@paulhastings.com>, "Zielinski, Paige E." <PZielinski@jenner.com>, "Carrero, Jacquellena T."
<JCarrero@jenner.com>

Anthony,

Please find attached Meta Platforms, Inc.'s response and objections to the hearing subpoena served on Meta on
December 23, 2024.

Thanks,

Laurie

**From:** Edelstein, Laurie J. <LEdelstein@jenner.com>
**Sent:** Saturday, January 4, 2025 11:16 AM
**To:** Anthony Patek <anthony@gutridesafier.com>
**Cc:** Rabbani, Ali <alirabbani@paulhastings.com>; ufc <ufc@gutridesafier.com>; Leader, Susan
<susanleader@paulhastings.com>; Zielinski, Paige E. <PZielinski@jenner.com>; Carrero, Jacquellena T.
<JCarrero@jenner.com>
**Subject:** Re: Bloom v. Zuffa - Subpoenas to Meta

Anthony,

Meta was served with the hearing subpoena on December 23, 2024.  Meta expects to send its written objections on
Monday, January 6, 2025.

Thanks,

Laurie

**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Friday, January 3, 2025 3:22:46 PM
**To:** Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Rabbani, Ali <alirabbani@paulhastings.com>; ufc <ufc@gutridesafier.com>; Leader, Susan
<susanleader@paulhastings.com>; Zielinski, Paige E. <PZielinski@jenner.com>; Carrero, Jacquellena T.

<JCarrero@jenner.com>

**Subject:** Re: Bloom v. Zuffa - Subpoenas to Meta

**External Email - Do Not Click** Links or Attachments Unless You Know They Are Safe

Hi Laurie -

I believe each was addressed to the registered service agent listed with the CA SOS, as well as Facebook HQ in Menlo Park.

The addresses should be the following:

1 Meta Way
Menlo Park, CA 94025

CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive
Sacramento, CA 95833

Facebook c/o Meta Platforms, Inc.
1601 Willow Road, Menlo Park, CA 94025

Note that I intend to inform the Court of the proposed production date and request an appropriate extension on Monday. We still have not received written objections to the subpoena to appear at the hearing, which I understand given the holidays, but I will alert the Court to the preliminary oral objection.

Regards,

**Anthony J. Patek**

Gutride Safier LLP

100 Pine Street, Suite 1250

San Francisco, CA 94111

anthony@gutridesafier.com

Ph: (415) 639-9090

M: (415) 505-6226

On Fri, Dec 20, 2024 at 3:53 PM Edelstein, Laurie J. <LEdelstein@jenner.com> wrote:

Anthony,

Thank you for your message.   Would you be able to provide additional information regarding service of the trial subpoena – for example, to whom was the mail addressed and when was it delivered?

With respect to the production of data:

- Meta will search for Pixel event data transmitted to Meta through Pixel IDs 1187589367948603; 1160489023965390; 1676148929325324; 764176390811447; 509857726552711; and 626274810874103 on September 17, 2021, April 9, 2022, and May 2, 2022.

  - To the extent data exists, Meta will produce up to 100,000 rows of Pixel event data per Pixel ID per day for a total of up to 300,000 rows of Pixel event data per Pixel ID over the three days and up to 1,800,000 rows of Pixel event data overall across Pixel IDs and days.

- Meta is targeting production of the data by February 7, 2025.

Thanks,

Laurie

---

**Laurie J. Edelstein**

**Jenner & Block LLP**
525 Market Street
29th Floor
San Francisco, CA 94105-2708   |   jenner.com
+1 415 293 5943   |   Tel
+1 415 730 4029   |   Mobile
LEdelstein@jenner.com
Download V-Card   |   View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system

---

**From:** Anthony Patek <anthony@gutridesafier.com>
**Sent:** Friday, December 20, 2024 2:40 PM
**To:** Edelstein, Laurie J. <LEdelstein@jenner.com>
**Cc:** Rabbani, Ali <alirabbani@paulhastings.com>; ufc <ufc@gutridesafier.com>; Leader, Susan <susanleader@paulhastings.com>
**Subject:** Bloom v. Zuffa - Subpoenas to Meta

**External Email - Do Not Click** Links or Attachments Unless You Know They Are Safe

Laurie

USPS tracking indicates that at least two copies of the subpoena to appear at the hearing have been delivered. See tracking numbers 9589071052701772090685 and 9589071052701772090678.  Let me know when you expect to send Meta's written response and objection.

Also, do you have an estimated extension for production of the pixel data that I can provide to Judge Boulware?

Regards,

**Anthony J. Patek**

Gutride Safier LLP

100 Pine Street, Suite 1250

San Francisco, CA 94111

anthony@gutridesafier.com

Ph: (415) 639-9090

M:  (415) 505-6226

 **2025-01-06 Meta Resp. + Objs. to Hearing Subpoena.pdf**
320K

EXHIBIT 10

Login / Create Account

HOME > NEWS > CONSTRUCTION & SITE SELECTION

# Meta opens logistics hub in Las Vegas warehouse district

## Facility will handle logistics for Meta's data centers

January 27, 2023   By: **Georgia Butler**   💬 Comment

Meta has launched a logistics warehouse in Las Vegas, Nevada, that will serve its west coast data center operations.

The social media company this week opened a new logistics hub will be located in Las Vegas' warehouse district.

The building covers 465,000 sq ft (43,200 sqm) and will handle logistics for Meta's data centers, including warehousing, packing and unpacking components, order picking and distribution, as well as inventory management, product series tracking, technical services, and rack and stack assembly.



– Getty Images

"This will be a distribution hub servicing the west coast network as far as data center goes," Gus Aiono, senior program manager for Meta said.

The facility will be managed by Arvato Supply Chain solutions. According to Michael Konopka, a representative for Arvato, the company will work with temporary agencies to staff the warehouse.

"We will be receiving, storing, and transforming products, providing technical services," said Konopka.

The facility is located near Tropical Parkway and the I-15 in Vegas's warehouse district, named thus for the rapid increase in businesses in the area.

Scott Black, councilor for ward 3 of Las Vegas, says he has seen a development 'boom' over the last couple of years.

"Tech is something new to Southern Nevada, and hopefully the first of many," Black said. "The I-15 will be transformed from the Speedway to Apex exit, you'll see both sides lined with commercial developments like this." Last week, North Las Vegas invested $37 million towards utilities to help spearhead more development projects in the district, part of the existing $250 million project.

The new logistics center, while having been in the works for over a year and a half, arrives shortly after Meta announced plans to shift to 'AI data centers'. The company stated in December 2022 that it was reviewing a number of under-construction data center projects as it was planning a drastic design change for its new facilities.

Apple built its own logistics warehouse, designed to serve its Reno data center campus, in 2019.

# ✉ Get a weekly roundup of North America news, direct to your inbox.

*Email:

*Country:

Select...

*I have read and agree to the Terms and Conditions and Privacy Policy
☐ Yes, I agree

Submit

Tags

| Meta | Arvato | Facebook | Scott Black | Las Vegas | Nevada | Gus Aiono | Micha |

Meta opens logistics hub in Las Vegas warehouse thernej DCD    Document 2    Filed 01/10/25    Page 112 of 115    pens-logistics-hub…

Case 2:25-cv-00065-RFB-EJY

×                                                                    ◯

Privacy Badger has replaced this Disqus widget

| Allow once | Always allow on this site |

## Whitepapers

**Futureproof your datacenter with DDC S-Series**

08 Jan 2025

**The future of data centers: Navigating energy efficiency policies in the EU and APAC**

07 Jan 2025

**Bridging the energy gap for European data centres**

06 Jan 2025

**Bytes and Watts: Energy Efficiency Directive (EED)**

23 Dec 2024

Case 2:25-cv-00065-RFB-EJY   Document 2   Filed 01/10/25   Page 113 of 115

More



Stream now: Tech showcase: Customizing cabling to fit your facility

**\*Email:**

**\*Country:**

Select...

**Please select which newsletters or magazine you would like to receive:**
☐ Daily Newsletter
☐ EMEA (Weekly)
☐ North America (Weekly)
☐ Asia Pacific (Weekly)
☐ MENA (Bi-Weekly)
☐ Skills & Workforce (Monthly)
☐ DCD>Magazine (Quarterly)

**\*I have read and agree to the** Terms and Conditions **and** Privacy Policy
☐ Yes, I agree

Submit

# Browse by Topic

## Business Operations

> Construction & Site Selection

> Investment / M&A

> Standards & Regulations

> Workforce & Skills

## Cooling

## Critical Power

> Grid Level

> Rack Level

## Connectivity

> Carrier Networks

> Networking

> Subsea Infrastructure

## IT Hardware & Semiconductors

## Sectors

> Cloud & Hyperscale

> Colocation & Wholesale

> Edge & IoT

> Enterprise

> Government

> HPC & Quantum

> Telecoms & 5G

## Security & Risk

> Cyber

> Outages

> Physical Security

## Software

> AI & Analytics

> Infrastructure Management

## Sustainability

# Browse by Region

Africa

# Products

Broadcasts
Create your free DCD Account today
Podcasts

Case 2:25-cv-00065-RFB-EJY Document 2 Filed 01/10/25 Page 115 of 115

China

Europe

> Nordics

> UK & Ireland

Latin America

Middle East

North America

Asia Pacific

> Southeast Asia

> India

> Australasia

Space

Central Asia

DCD>Academy
Global Awards 2024
CEEDA
DCD Magazine
Newsletters

Language Websites:   Spanish //  Portuguese

© 2025 DCD  Terms & Conditions   Data Protection / Privacy Policy   Office locations   Working for us

Data Centre Dynamics Ltd (DCD), 32-38 Saffron Hill, London, EC1N 8FH
Email. info@datacenterdynamics.com
DCD is a subsidiary of InfraXmedia